**H. L. HEATON et al., Appellants,**

**v.**

**Lena Ann BRISTOL et al., Appellees.**

**No. 3580.**

Court of Civil Appeals of Texas.

Waco.

Oct. 2, 1958.

Rehearing Denied Oct. 23, 1958.

Will Wilson, Atty. Gen., Leonard Passmore, James N. Ludlum, John Reeves, Asst. Attys. Gen., J. A. Amis, Jr., College Station, for appellants.

Dan Moody, Austin, as amicus curiae.

John M. Barron, W. S. Barron, Bryan, for appellees.

TIREY, Justice.

This is an appeal from an order of the trial court which declared the eligibility of appellees to enroll as students in the Agricultural and Mechanical College of Texas and ordered that mandamus issue to appellants directing them to admit appellees as students.

We find these recitals in the judgment:

" * * * but the Court, feeling that the magnitude of the questions involved in this litigation is of sufficient importance to embody in this judgment certain findings of fact and conclusions of law, makes the following Findings of Facts:

"1. That the Relators are citizens of Texas and the United States of America by birth and are now residents of the State of Texas and are scholastically, morally, and physically qualified to enter the Agricultural and Mechanical College of Texas.

"2. That the Relators duly made application for registration and matriculation as students at said Agricultural and Mechanical College of Texas on the 24th day of January, 1958, but they were refused admission solely on the ground of their female sex.

"3. That the Respondents are the properly constituted officials of said Texas Agricultural and Mechanical College, as pleaded and shown in the First Amended Petition herein, being, respectively, the Registrar, President, and Board of Directors, of said Texas Agricultural and Mechanical College.

"4. That the Agricultural and Mechanical College of Texas was established by an Act of the Texas Legislature on April 17, 1871 [Acts 1871, 1st. Sess., c. 44], pursuant to the Morrill Act, known as the Land Grant Act, being currently known in the United States Code Annotated as Title 7, Sections 301 to 308, inclusive, as amended, and that Texas by its acceptance of the provisions of said Act, is and was charged with the duty to devote the Agricultural and Mechanical College of Texas to the purposes named in said Morrill Act.

"5. That the 'industrial classes' referred to in Section 304 of the Morrill Act makes no exclusion for the liberal education of women, but recites 'the liberal education of all industrial classes.'

"6. That the Agricultural and Mechanical College of Texas was and has been from the beginning of its operation on October 4, 1876, primarily attended by male students and has been recognized generally as an 'all-male' school, only by reason of the policy of the various Boards of Directors and by custom and usage, but there was no administrative policy officially excluding women as students in the regular sessions of the College until September 3, 1925.

"7. That on various occasions, at intervals, as early as 1902 and as late as 1934, the Agricultural and Mechanical College of Texas has admitted a few women to the regular sessions at College Station and has consistently admitted women as students at the sessions of summer school for many years, but no degrees are allowed to be received nor conferred upon women, even in the summer sessions.

"8. That the Agricultural and Mechanical College of Texas is the third largest State supported institution of higher learning in Texas, and in reality it is a university rather than a college, as it is made up of several schools or colleges, as follows: (1) The school or college of Arts and Sciences; (2) the school or college of Agriculture; (3) the school or college of Engineering; (4) the school or college of Military Science and Tactics (in which no degree is offered); (5) the school or

college of Veterinary Medicine; (6) the school or college known as the Basic Division; and (7) the Graduate School; all as more fully shown by the current catalog of the Agricultural and Mechanical College of Texas in the bulletin for the year 1957–58, all of which schools or colleges are fully suitable to and appropriate to the education of women as well as men.

"9. That the Agricultural and Mechanical College of Texas offers baccalaureate degrees in approximately 78 major fields, and it offers degrees in approximately 40 major fields for master's degree, and in approximately 24 fields for the degree of doctor of philosophy.

"10. That the Agricultural and Mechanical College of Texas offers approximately 17 majors or courses of study not obtainable elsewhere in the State of Texas, most of said majors being in the School of Agriculture but including Oceanography and Meteorology, Floriculture, Entomology, and all of the courses in the School of Veterinary Medicine and Surgery.

"11. That there is no natural or factual basis for the classification of women for exclusion as students from the Agricultural and Mechanical College of Texas, considering the educational objectives involved, and that the grounds urged are irrational and educationally non-existent, and the differences in men and women are not reasonably related to any proper governmental objective here attempted to be imposed.

"12. That the offering of an education at Texas Women's University, which is an all-female school, and other State supported institutions of higher learning in this State, forms no rational reason for exclusion of women from attendance, at the Agricultural and Mechanical College of Texas, and does not justify discrimination against

them at the said Texas Agricultural and Mechanical College.

"13. That the exclusion of women at the Agricultural and Mechanical College of Texas does not in any wise promote the health, morals, and general welfare of the people of Texas under the police powers as vested in certain instances in certain bodies under the statutes of this State, but on the contrary it discriminately deprives approximately one-half of the citizens of Texas of an education at the third largest State supported institution of higher learning in the State of Texas.

"14. That the Relators did all that they possibly could to enter the Agricultural and Mechanical College of Texas in seeking admission and attempting to enroll and register at said institution; that no specific administrative machinery providing for admission at Texas Agricultural and Mechanical College as shown in the College's catalog makes it necessary for any individual to proceed further than the Registrar or Director of Admissions and the President of the school in applying for admission to it, both of said officials being the lawful representatives of the Board of Directors of said school, and even if any administrative machinery had been provided and had existed, it would have been insufficient for a proper decision upon the issues in this case.

"15. That the Agricultural and Mechanical College of Texas is the only Land-Grant College in the nation, out of a total of 69 Land-Grant Colleges, which is not co-educational; that is to say, the only one that excludes women as students.

"16. That less than fifty per cent of the current student body at the Agricultural and Mechanical College of Texas are members of the Cadet Corps and taking military science and tactics, or what is generally known as military training.

"17. That military science and tactics is not required of the students at the Agricultural and Mechanical College of Texas, but said course or courses are on a voluntary basis and have been for the past three or four years.

"18. That the Agricultural and Mechanical College of Texas, while regarded by some of the officials of said institution as being a boarding school or dormitory-type school, has at the present time more than twenty-five per cent of its total students enrolled residing off of the campus at College Station, said students bearing the designation of 'day students.'

"19. That the present enrollment at the Agricultural and Mechanical College of Texas is from 2,000 to 2,500 less than it was ten years ago, and the present total enrollment is approximately 6,300 students, said number being approximately 1,100 less than the enrollment for the fall semester in September, 1957.

"20. That the Agricultural and Mechanical College of Texas has available at this time adequate classroom facilities and adequate teaching facilities for the admission of women; that adequate courses of study suitable to women are available, and the admission of women at this time would not overcrowd in any wise the present available facilities of the said institution.

"And the Court, based upon the evidence adduced in this case and upon the Findings of Facts as above set forth, concludes, as a matter of law, as follows:

"1. That the Constitution and laws of the State of Texas do not provide for the exclusion of women or females at the Agricultural and Mechanical College of Texas.

"2. That the Board of Directors of the Agricultural and Mechanical College of Texas is without any delegated power or authority to exclude female citizens of Texas from attendance at said institution as students, and that in assuming discretionary power or right to exclude qualified female citizens from admission to said Agricultural and Mechanical College of Texas, the Board of Directors of said College (1) has abused its authority or discretionary power; (2) has exceeded any and all authority vested in it by the Legislature of this State; and (3) has capriciously and arbitrarily exercised a function contrary to the public interests of the citizens of the State of Texas.

"3. That the only statutory provision giving the Board of Directors of the Agricultural and Mechanical College of Texas discretionary authority seems to be contained in sub-section six of Article 2613 of Vernon's Annotated Texas Statutes, but this provision contains no power of exclusion given said Board by the Legislature of this State, but only gives the Board the power to make by-laws, rules, and regulations, and does not embrace nor include the right of the Board to exclude Relators or any other scholastically qualified female citizens of this State.

"4. That the Legislature of Texas has not re-enacted Articles 2608 and 2613 in the face of any administrative ruling excluding women from the Agricultural and Mechanical College of Texas, as the last enactment made by the Texas Legislature was made in the spring of 1925, at the time of the statutory codification, which came prior to the resolution of the Board of Directors of the Agricultural and Mechanical College of Texas which they adopted in September 1925, excluding women.

"5. That there was no legislative intent to delegate the power of excluding women from attendance at the Agricultural and Mechanical College

of Texas, but if there were such was an unconstitutional delegation of a simple legislative function and policy and power, and if the Texas Legislature had intended to delegate any such authority to said Board of Directors it was powerless to delegate such a simple, basic, and uncomplicated legislative function to an administrative board, and the Legislature, itself, would have spelled out in the statute that it was their intent to exclude females, and the Agricultural and Mechanical College of Texas would have been designated by statute as an all-male school.

"6. That as a matter of law separate but equal facilities are inherently unequal as applied to males and females, and as a matter of law any attempt at classification of males and females for educational purposes at the Agricultural and Mechanical College of Texas is irrational and immaterial to the educational objectives sought, and does violence to Article I of Section 3 of the Texas Constitution, and is contrary thereto, and is in clear violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution, and denies the Relators the equal protection of the laws.

"7. That pursuant to the terms of the Land-Grant College Act, known and contained in the Federal Statutes originally as the Morrill Act, and its requirements for indiscriminate education of the industrial classes, Texas having accepted its benefits by providing said Land-Grant College at College Station, Texas, also assumed the obligation to permit Relators and other qualified women the right to enroll as students at said institution, and the present policy of the Agricultural and Mechanical College of Texas, in excluding Relators from admission as students at said institution, has violated the privileges and immunities clause of the Fourteenth Amendment to the Federal Constitution.

"8. That the out-of-State grant of tuition procedure currently being followed by the Agricultural and Mechanical College of Texas, particularly in the case of female citizens of Texas who desire to enroll in the School of Veterinary Medicine at the Agricultural and Mechanical College of Texas, which said course of Veterinary Medicine is offered only at College Station and no other place in the State of Texas, clearly violates the equal protection of the laws clause of the Fourteenth Amendment to the Constitution.

"9. The right to equal protection of the laws is a personal right guaranteed to all citizens, and the offering of similar courses of study at other State-supported institutions of higher learning cannot be achieved in this case through indiscriminate imposition of inequalities nor permit discrimination at any given institution, if the education offered is beneficial to women as well as men.

"10. The Agricultural and Mechanical College of Texas is a branch of the University of Texas, so far as the Constitution of the State of Texas is concerned, but the intent and meaning in the legislative expression in vesting the statutory government responsibility in the Regents of the University of Texas, under Article 2587, and for the Agricultural and Mechanical College of Texas, under Article 2613, in the Board of Directors, gives the institution at College Station an independent status despite the Constitutional expression and has no bearing upon the issues involved in this lawsuit.

"11. Traditions, customs, and usages cannot abridge statutory and Constitutional personal rights of these Relators or any other citizens.

"12. The Relators are entitled to register and enroll at the Agricultural

and Mechanical College of Texas as students upon compliance with all lawful regulations of the College and payment by them of all required tuition fees and other charges, except those inherently inapplicable or unsuited for female students.

"13. That the exclusion of Relators from registering as students at said Agricultural and Mechanical College of Texas violates Article 1, Section 19, of the Texas Constitution, in that Relators are deprived of privileges accorded them without due course of law."

The court then decreed that the relators were entitled to a writ of mandamus as prayed for and granted the writ directing appellants to proceed with all reasonable dispatch to enroll and register the appellees into the College. The court further decreed that under the provisions of Art. 2524–1, Uniform Declaratory Judgment Act, Vernon's Ann.Tex.Civ.St., the relators were declared to be eligible for admission to the Agricultural and Mechanical College of Texas as students, and that sex shall henceforth be no bar to their entry, and that such students shall have the right to pursue courses of study at the school, subject to lawful rules and regulations promulgated for and with reference to women students, and appellees are declared to have such right and privilege without the necessity of enrollment in military courses, until said school offers such courses in military, naval or air training inherently applicable and suitable to women generally and as provided by law.

The judgment is assailed on four points. They are substantially that the trial court erred (1) in holding that appellants acted without legal authority in refusing to permit appellees to enroll as students in the Agricultural and Mechanical College of Texas; (2) in seeking to control the exercise of discretion vested by law in the Board of Directors of the Agricultural and Mechanical College of Texas; (3) in

holding that the exclusion of appellees from the Agricultural and Mechanical College of Texas was violative of their constitutional rights; and (4) in overruling appellants' plea to the jurisdiction and in abatement and appellants' special exceptions to appellees' trial petition in that such action erroneously allowed appellees to plead mere conclusions of law rather than facts sufficient to show that appellees have a clear right to the writ of mandamus prayed for by appellees.

Evidence was tendered to the effect that appellee Mrs. Bristol, was 34 years old, married and the mother of two minor children; that she resides with her husband and children in the city of Bryan. She testified in part:

"Q. Now, can you explain to the court and to me why you want to attend an all-male institution? A. I want to go to school at A. & M. for several reasons.

"Q. What are those reasons? A. First of all, as was brought out here yesterday, the school is practically on my doorstep. It is convenient. It is within five miles of my home. It would be much less expensive for me to go to A. & M. My home is here in Bryan. My family is here. It would be convenient and it would be inexpensive, and then, because A. & M. is one of the better schools, one of the larger schools of the south, and carries with it a great deal of prestige, the fact that I would have a degree from A. & M.

"Q. Now, then, suppose you were a resident of Amarillo, would you still want to go to Texas A. & M.? A. Not if my family lived and my home was maintained in Amarillo.

"Q. In other words, you would choose one of the state-supported institutions more near to Amarillo to attend, would you not? A. Probably."

Mrs. Bristol further testified to the effect that she desired to obtain a Bachelor of Science degree, with a major in Biology, and testimony is also uncontroverted that such a degree program is available to appellee at any one of 17 other State-supported institutions of higher learning, including Texas Women's University, which is an all-girls school.

Appellee Mrs. Barbara Tittle testified to the effect that she is 20 years old, a widow and the mother of a child, and that she resides in the city of Bryan; that it is her desire to obtain a Bachelor of Science degree, with a major in Chemistry, which would enable her to be a laboratory technician. She testified specifically in part as follows:

"Q. Now, then, do you want to attend Texas A. & M. because of its convenience to your residence? A. Yes, I do.

"Q. And I presume that is the sole basis for your application to go there, that you live here in Bryan? A. Yes, and I can't afford to go to any other school outside of Bryan. * * *

"Q. Assuming you lived, for example, at Texarkana, would you make application to enter A. & M.? A. Not if there was a closer college around, I would not."

The evidence was uncontroverted that Mrs. Tittle could pursue her desired course of study at any one of the other 17 State-supported institutions of higher learning, including Texas Women's University.

The record shows that the Agricultural and Mechanical College of Texas is the oldest State-supported institution of higher learning in Texas. It was established pursuant to Acts of 1875, pages 72, 74, General Laws of the State of Texas, and the College first opened its doors in October 1876, and it has been in continuous operation since that time. The statutory provisions relating to the College are grouped under Chapter 2, Title 29 of the Revised Civil Statutes of Texas.

Art. 2607 provides:

"The Agricultural and Mechanical College of Texas, located in Brazos County, and by the Constitution made and constituted a branch of the University of Texas, for instruction in agriculture, the mechanical arts and the natural science connected therewith, shall be managed and controlled as herein provided."

Art. 2608 provides:

"The leading object of this College shall be, without excluding other scientific and classical studies, and including military tactics, to teach such branches of learning as are related to agriculture and the mechanical arts, in such manner as the legislature may prescribe, in order to promote the liberal and practical education of the industrial classes in the several pursuits and professions in life."

Art. 2610 provides:

"The government of the Agricultural and Mechanical College shall be vested in a Board of Directors composed of nine persons. Said board shall elect from their number a president of the board, who shall call said board together for the transaction of business whenever he deems it expedient. The board shall have the right to make and use a common seal."

Art. 2613 provides in part:

"6. The board shall, also, from time to time, make such by-laws, rules and regulations for the government of said College as they may deem necessary and proper for that purpose, and shall regulate the course of study, the rates of tuition, the manner of performing labor, and the kind of labor to be performed by the students of said College, and shall also prescribe the course of discipline necessary to enforce the faithful discharge of the duties of the professors, officers and students."

The 27th Legislature in Regular Session (in 1901), H.B. 35, c. 132, Vernon's Ann.Civ.St. art. 2624 et seq., provided for the establishment of the Industrial Institute and College for White Girls, and in Section 1 thereof we find:

"That an industrial institute and college is hereby established for the education of white girls in the arts and sciences, which shall be known as the 'Texas Industrial Institute and College for the Education of White Girls of the State of Texas in the Arts and Sciences,' and shall be located at * * *"

The last section of the Act, Sec. 13, provides:

"The fact that there is now no institution for the industrial training of the white girls of Texas, and that work should begin at once to prepare for the opening of said institution in the fall of the present year, creates an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days be suspended, and that this act take effect and be in force from and after its passage and it is so enacted."

We think we should state here that since the founding of the College it has been operated and universally recognized and accepted as a school for the training and education of young men and such has been the interpretation given to the articles of our statute establishing A. & M. College by the Board of Directors throughout the years of its existence, and the Legislature, with knowledge of the way the school has been operated by the Board of Directors, has consistently, from time to time, made appropriations for its operation. As we read the provisions of the act establishing the College of Industrial Arts at Denton, heretofore quoted, we think it is clear that such school was established by the Legislature in recognition of the fact that the industrial training afforded by A. & M. was not available to girls. Therefore, our Legislature, instead of making the training afforded by A. & M. available to girls, established the Denton school as a separate school exclusively for girls to serve the purpose which A. & M. was not serving. We think consideration of the above quoted statute evidences actual knowledge by the Legislature that A. & M. was not co-educational and that the intent of the Legislature from the beginning and always was to leave the matter of sex of students to the Board of Directors. We think there is additional evidence that our Legislature in planning and laying out the structure of higher education in Texas intended that the Board of Directors of the College should be invested with exclusive discretionary authority in determining which sexes should be admitted to the College. In examining the statutes relating to other State colleges and universities we find that in all of such statutes, with the exception of those dealing with the colleges for teachers, the sex or sexes of students to be admitted are specifically stated. For example, Art. 2587, V.A.T.S. provides among other things that the University of Texas shall be opened to all persons of both sexes. Sec. 1 of Art. 2651a recognizes North Texas State College as being co-educational. Art. 2629, V.A.T.S. provides that Texas Technological College shall be co-educational. Art. 2618 provides that Tarleton State College shall be co-educational. Art. 2621, V.A.T.S. directs that Arlington State College shall be co-educational. Art. 2637a, V.A.T.S. provides that Lamar State College of Technology shall be co-educational. Art. 2628a–1, V.A.T.S. provides that Texas College of Arts and Industries shall be co-educational. Art. 2639, V.A.T.S. provides that Prairie View State Normal and Industrial College shall be co-educational. Art. 2624, V.A.T.S., provides that Texas State College for Women shall be for the education of white girls.

Evidence was tendered to the effect that the Board of Directors of the College, through the years, passed a number of resolutions relating to the policy of excluding women from the College. The first one was December 30, 1915, in which the Board re-

jected a bequest to the College made by the will of Clara B. Dismukes Vande Las for the purpose of establishing and maintaining a Chair of Domestic Science. The resolution, among other things, recited: "Whereas, to accept the bequest of Mrs. Vander Las would mean a change of the policies of the institution that have prevailed since the opening of the institution in 1876 and make the institution co-educational * * *" In 1923 the Board, by formal resolution, rejected the request of Mrs. S. E. Eberstadt of Bryan for permission to allow her niece to attend the College. Again, in 1925, the Board by resolution stated that "no girls should ever be admitted to the College." The College was opened in 1876 as an all-male institution but during the school years of 1922–23, 1923–24, 1933–34, and possibly one or two school years at the turn of the century, female students have been admitted, and testimony was tendered to the effect that the Board, in granting permission to young women, did so because they were daughters of faculty members and college employees and because of the fact that the college professors and employees had had to take substantial cuts in salary, and this action was taken to alleviate hardships in this respect. This record reflects that the Board of Directors has governed the College with the view that it was vested with discretionary power to exclude female students and the Legislature of the State of Texas, since the beginning of the school, has acquiesced in the Board's concept of its authority. We think that under this record and under the legislative history of our State, that we must assume that the Legislature was fully aware of the Board's policy excluding female students, and, in all events, the Legislature has consistently, since the establishment of the College, brought forth the provisions pertaining to the government of the College in each revision of the statutes, down to and including the 1925 revision, without substantial change. Moreover, the courts of Texas have manifested a strong inclination to adopt and follow the construction given a statute by an administrative agency charged with the duty of its execution and enforcement. This is particularly true where the construction has been followed with substantial uniformity over a long period of time. See Isbell v. Gulf Union Oil Co., 147 Tex. 6, 209 S.W.2d 762; Shaw v. Strong, 128 Tex. 65, 96 S.W.2d 276; Stanford v. Butler, 142 Tex. 692, 181 S.W.2d 269, 153 A.L.R. 1054; Calvert v. Fisher, Tex.Civ. App., 259 S.W.2d 944 (writ ref.); Greenwood v. City of El Paso, Tex.Civ.App., 186 S.W.2d 1015 (no writ history); Burroughs v. Lyles, 142 Tex. 704, 181 S.W.2d 570; Associated Indemnity Corp. v. Oil Well Drilling Co., 258 S.W.2d 523 (writ granted and affirmed 153 Tex. 153, 264 S.W.2d 697); Magnolia Petroleum Co. v. New Process Production Co., 129 Tex. 617, 104 S.W.2d 1106.

In Texas Employers Ins. Ass'n v. Holmes, 145 Tex. 158, 196 S.W.2d 390, point page 395, we find this pronouncement: "Where a statute which has been construed, either by a court of last resort or by executive officers, is re-enacted without any substantial change of verbiage, it will continue to receive the same construction." We think the foregoing rule has great significance in the application of the rule of law applicable to this factual situation.

In 39 Tex.Jur., Statutes, Sec. 41, page 266, we find this statement of the rule: "Where a statute which has been construed, either by a court of last resort or by executive officers, is re-enacted without any substantial change of verbiage, it will continue to receive the same construction. This settled rule applies whether the old act is merely amended or is incorporated in a revision; and it applies with particular force in the construction of a statute which has been repeatedly re-enacted without change." See also Kerens Nat. Bank v. Stockton, 120 Tex. 546, 40 S.W.2d 7, 77 A.L.R. 362; Texas Fidelity & Bonding Co. v. City of Austin, 112 Tex. 229, 246 S.W. 1026; Citizens National Bank v. Texas Compress Co., Tex. Civ.App., 294 S.W. 331 (writ ref.). The above rule of construction is binding upon us.

■ That leads us to say that we are not in accord with the trial court's conclusion of law wherein he said in effect that the Legislature has not re-enacted Arts. 2608 and 2613 aforesaid in face of administrative ruling excluding women from the Agricultural and Mechanical College of Texas. At all events, the Legislature has not seen fit to make any substantial change in the foregoing statutes. The trial court's conclusion of law does not take into consideration the resolution of the Board in 1915, and another passed in 1923, nor does it take into consideration the uncontroverted evidence to the effect that the College has been opened, operated and universally recognized and accepted as an all-male institution from 1876 down to the present time. It is true that during the Regular Session of the 53rd Legislature, 1953 Senate Concurrent Resolution No. 19 was introduced, which directed the Board of Directors to admit women to the regular sessions of the College. The Resolution was adopted by the Senate by voice vote on March 3, 1953. On March 5, 1953, the Senate voted to reconsider the vote by which the Resolution was adopted. A motion to table carried by a vote of 28 yeas and one nay. The Legislature again demonstrated that it did not wish to impair the discretionary authority of the Board of Directors. Needless to say, this action recognized the existing authority of the Board to exclude women and placed its stamp of approval on the long-continued policy of the Board of excluding women.

■■ Appellants' Point 2 is that the trial court erred in seeking to control the exercise of discretion vested by law in the Board of Directors of the Agricultural and Mechanical College of Texas. This court believes that in order to reach a correct opinion in this case it must constantly keep in mind the fact that the Legislature of Texas has the power and corresponding duty to fix the public policy of this State. The only limitation upon such authority is the Constitution of Texas and the Constitution of the United States. Unless the Legislature shall contravene the provisions of the Constitution of Texas or the Constitution of the United States in fixing the public policy of this State, it cannot be changed by judicial decree. As a part of the public policy of this State our Legislature has provided for a public school system, and from time to time it has passed various and sundry acts supplementing our previous statutes with respect to the public schools and has sought to make them more nearly uniform, and has also provided for many improvements. The Legislature has likewise provided for a system of higher education and we have previously set out various statutes passed by the Legislature in order to maintain a system of higher education. The legislative policies of our state in each of these have almost always been favorably construed by our courts of appeal. The Constitution of Texas is silent with respect to the sexes that may be admitted to the University of Texas. Likewise, there is no provision touching in any way upon the subject of the sex of the students to attend the College. Needless to say that the Legislature has the control of the University, the College, and all other state institutions of learning. From time to time the Legislature has enacted certain laws dealing with the University and certain, distinct and separate laws dealing with the College. In dealing with the College the Legislature has imposed no requirement to the effect that the Board of Directors shall admit as students those of the female sex. Moreover, in broad and general terms the Legislature has entrusted to the Board the government of the College, with power to make such by-laws, rules and regulations for the governing of the College as it may deem necessary and proper for that purpose. See Sec. 6, Art. 2613, aforesaid. It is this court's view that under the laws enacted by our Legislature, in determining what sexes may be admitted as students of the College, the Board of Directors has discretionary power. Appellees in this action seek to get relief by writ of mandamus. If we are correct in our view that the Board of Directors has discretionary power to determine what

sexes are to be admitted as students of the College, appellees have no basis for their suit and it must necessarily fail. Our Supreme Court in Glasscock v. Commissioner of the General Land Office, 3 Tex. 51, 53, made this statement of the rule: "It is an undoubted principle of law, that this writ (mandamus) will not issue against a public officer, unless to compel the performance of an act clearly defined and enjoined by the law; and which is, therefore, ministerial in its nature, and neither involves any discretion, nor leaves any alternative." In Bracken v. Wells, 3 Tex. 88, 90, our Supreme Court made this pronouncement: "A court cannot issue a mandamus to compel a public officer to perform an act which is not clearly prescribed by law * * *."

Our Supreme Court has not seen fit to change the rules here stated. See also Meyer v. Carolan, 9 Tex. 250; Caven v. Coleman, 100 Tex. 467, 101 S.W. 199; DePoyster v. Baker, 89 Tex. 155, 34 S.W. 106; Anderson v. Rogan, 93 Tex. 182, 54 S.W. 242; Trinity Life & Annuity Society v. Love, 102 Tex. 277, 115 S.W. 26; Beach v. McKay, 108 Tex. 224, 191 S.W. 557; Lacy v. State Banking Board, 118 Tex. 91, 11 S.W.2d 496; Erp v. Robinson, 106 Tex. 143, 155 S.W. 180; Mechem, "Public Officers," Secs. 937, 938, p. 626; Arberry v. Beavers, 6 Tex. 457, 465; High, "Extraordinary Legal Remedies," Sec. 24, p. 31, Mandamus; See also Sec. 42, pp. 50–51 of same text; Womack v. Berry, Tex., 291 S.W.2d 677; Anchor v. Martin, 116 Tex. 409, 292 S.W. 877; Flippen v. Murray, Tex.Civ.App., 66 S.W.2d 757 (no writ history); McGuire v. City of Dallas, Tex.Civ.App., 151 S.W.2d 617 (er. dis. correct judg.).

As we understand our decisions, we think the rule is that before a mandamus may be awarded against a public officer for the performance of an alleged duty, the duty must have already been imposed by plain, unambiguous and positive statute, and be imperatively required. It will never issue to enforce a doubtful right, nor where the regular duty is not clear and certain. The duty, in a word, must be ministerial, one which does not involve any discretion, and which leaves no alternative.

We find nothing in the pleadings of the appellees, nor in their evidence or in the judgment of the trial court, that points to any provision of law which clearly and imperatively requires the admission of females to the College. There is certainly nothing in this record to show that appellees' right of admission to the College is free from doubt, nor is there anything in the record pointing to a clear and certain duty on the part of the Board of Directors to admit appellees as students. Under the rule of law here stated and under the undisputed factual situation, the trial court was without authority to grant the writ of mandamus, and by virtue thereof appellees' suit must fail. It necessarily follows that this court is of the view that it is discretionary with the Board of Directors as to whether or not women should be permitted to enroll as students, and that this discretionary power cannot be changed by judicial decree and can be changed only by the Legislature.

Appellants' 3rd Point is that the trial court erred in holding that the exclusion of appellees from the Agricultural and Mechanical College of Texas was violative of their constitutional rights. We sustain this contention for reasons which we shall hereafter briefly state.

This record is without dispute that appellees wished to enter the College principally upon the ground that they were citizens of the community in which it was located and that it would be more convenient for them and less expensive than to go elsewhere to pursue their educational desires. The record is without dispute that appellees could have pursued their education at other State supported institutions.

As we understand the appellees' position here, as well as the holding of the trial court, it is that the exclusion of appellees from the College was in violation of the equal protection clause in the 14th Amend-

ment of the Constitution of the United States, and of the privileges and immunities clause in the Amendment, and likewise violative of both Sections 3 and 19 of Article I of the Constitution of Texas, Vernon's Ann.St. We have carefully reviewed the foregoing provisions of our Federal Constitution and that of our State Constitution and we cannot agree with appellees' contentions. The record here shows that the College is one of seven State supported military colleges in the United States. It is the only State supported military college in the State of Texas.) The military program at A. & M. differs from the Reserve Officer's Training Program offered at various other state colleges and universities in a number of material respects. The participants in the military program at A. & M. are organized on a corps basis; the men are organized into military units, and they are constantly under military discipline twenty-four hours a day, seven days a week. It is true that the record shows that in previous years military science and tactics was not required of the students at A. & M., and that said course or courses are on a voluntary basis and that this condition has existed for the past three or four years. However, the record does disclose that beginning with the Regular Session in September 1958 the College, by order of the Board of Directors, will require two years of military training by every able-bodied student. The record also discloses that military training was in effect at the College from 1876 to 1954, when the Board of Directors made the training voluntary on a trial basis. Therefore, the restoration of the compulsory military training represents nothing more than a return to a long observed policy.\ The trial court was and is concerned only with the actions of the present Board and its regulations. Testimony was also tendered to the effect that Dr. Harrington, President of the College, was of the view that the enrollment projection for the College would reach 13,-000 by 1970, and this projection was made on the assumption that the College would remain all military; that present facilities

available for instructional purposes are sufficient to accommodate 7,500 to 7,600 students; that there were 7,474 male students enrolled on October 15, 1957; that the majority of the dormitories are built like barracks with common toilet facilities and therefore not adaptable to occupancy by women students. (The foregoing uncontroverted factual situation illustrates the drastic reorganization of the college facilities which would be necessary in order to carry out the judicial decree requiring the admission of women students. The judgment does not suggest how the Board of Directors can proceed to resolve the vexing problems of the College which the admission of women students would create. It is obvious there would have to be much planning and new appropriations made by the Legislature in order to carry out the trial court's decree. Neither counsel for appellants nor appellees have pointed out any case wherein an appellate court of any jurisdiction has at any time held, or even intimated, that a state cannot, as a part of its over-all educational system, maintain one all-male or one all-female university as the Legislature has done in Texas for our higher educational system. There is certainly not even the remotest suggestion by inference or otherwise in any of the reported cases that the system now maintained by Texas constitutes a violation of any constitutional provisions, State or Federal.

The Texas system of higher education, as it exists today, is comprised of 18 institutions fully supported by State funds. Each of these institutions, with the exception of A. & M. and Texas Women's University, is open to both sexes and has remained open to qualified members of each sex since the date of founding. A. & M. is only one part of the whole system, just as Texas Women's University is just a single part of the same system, along with the University of Texas and the other State colleges. No single college or university was established to serve the full and varied academic needs of the State, but the system, which includes each individual institution, fulfilling the respec-

tive objects of its creation, has been established to meet and fill the total and diverse educational needs of the State. So we must view the system as a whole in order to ascertain whether there is discrimination between the sexes, the entire system must be viewed, and not a single institution standing alone. This record shows that the system does not discriminate but makes ample and substantially equal provision for the education of both sexes. The Legislature in its wisdom has seen fit to afford to the individual the widest possible choice in the selection of a college or university. There are 16 co-educational institutions, offering the widest range of subjects, for the choice of those desiring the academic and social environment supplied by such institutions. There is one institution which offers an all-male environment, and one which offers an all-female environment. We think the foregoing shows conclusively that appellees' exclusion from the College was not violative of any of their constitutional rights. It is obvious that appellees, being denied the right to attend the State college in their home town, are treated no differently than are other students who reside in communities many miles distant from any State supported college or university. The location of any such institution must necessarily inure to the benefit of some and to the detriment of others, depending upon the distance the affected individuals reside from the institution.

Moreover, sex, as a basis for legislative classification, is used with considerable frequency in both the statutes of the United States and of the several states. The range of this legislation covers such diverse subjects as jury service, voting rights, employment in certain pursuits, minimum wage and hour legislation and property rights. See 16A C.J.S. Constitutional Law § 544, pp. 480–481; 2 Stanford Law Review 726; State v. Baker, 50 Or. 381, 92 P. 1076, 13 L.R.A.,N.S., 1040; State v. Hunter, 208 Or. 282, 300 P.2d 455; West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703; Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940; Radice v. New York, 264 U.S. 292, 44 S.Ct. 325, 68 L.Ed. 690; Quong Wing v. Kirkendall, 223 U.S. 59, 32 S.Ct. 192, 56 L.Ed. 350; Muller v. Oregon, 208 U.S. 412, 28 S.Ct. 324, 52 L.Ed. 551; Riley v. Massachusetts, 232 U.S. 671, 34 S.Ct. 469, 58 L.Ed. 788; Miller v. Wilson, 236 U.S. 373, 35 S.Ct. 342, 59 L.Ed. 628; Bosley v. McLaughlin, 236 U.S. 385, 35 S.Ct. 345, 59 L.Ed. 632; Middleton v. Texas Power & Light Co., 108 Tex. 96, 185 S.W. 556, 561.

In the Middleton v. Texas Power & Light Company case our Supreme Court said: "Classification for the purpose of a law is a legislative function. It will be sustained by the courts unless it is wholly without any reasonable basis."

In Mumme v. Marrs, 120 Tex. 383, 40 S.W.2d 31, 36, our Supreme Court had before it the constitutionality of the public school rural aid bill, which was challenged on the ground that it violated Sections 3 and 19 of Article I, Constitution of Texas. The court in its opinion pointed out that Section I of Article VII of our State Constitution directed the Legislature to "make suitable provision for the support and maintenance of an efficient system of public free schools." In the opinion we find this statement: " * * * it necessarily follows that it (the Legislature) has a choice in the selection of methods by which the object of the organic law may be effectuated. The Legislature alone is to judge what means are necessary and appropriate for a purpose which the Constitution makes legitimate * * *"

Moreover, it was incumbent upon the appellees in this cause to bear the burden of showing the unconstitutionality of the discretionary authority vested in the Board of Directors. This we think they wholly failed to do. The applicable rule of law is stated in 9 Tex.Jur., under Statutes, page 479, which we quote in part:

"A statute should not be annulled merely because doubt may be suggested

as to its constitutionality. On the contrary, where the judicial conscience is uncertain or doubtful as to whether the act is in conflict with the constitution, the rule is to hold the legislation valid and effectual, all doubts being resolved in favor of the challenged statute. In such circumstances it is due to the legislative branch of the government that its action be upheld and its decision accepted by the judicial department."

See Ex parte George, Tex.Cr.App., 215 S.W.2d 170.

■ Finally, we think the controlling question with reference to the above matter is whether the State, as a matter of public policy, may as a part of its total system of higher education, maintain, for the choice and service of its citizens, one all-male and one all-female institution, along with sixteen institutions which are co-educational. We think undoubtedly the answer is Yes. Such a plan exalts neither sex at the expense of the other, but to the contrary recognizes the equal rights of both sexes to the benefits of the best, most varied system of higher education that the State can supply.

■ Appellees contend and the trial court found in effect that by accepting the benefits of the Land Grant Act (Acts July 2, 1862, Chapter 130, as amended, Act March 3, 1883, Chapter 102, 7 U.S.C.A. § 301 et seq.) the State thereby assumed the obligation to permit the enrollment of both sexes at the Agricultural and Mechanical College, and hence the exclusion of appellees from the College violates the privileges and immunities clause of the 14th Amendment to the Constitution of the United States. We overrule this contention.

Section 4 of the Land Grant Act, among other things, prescribed the leading courses to be taught at the Land Grant institutions "in such manner as the legislatures of the States may respectively prescribe." The Act is silent on the question of what sexes are to be admitted to such institutions. The grants made by the act are to the respective states and not to any institution established by the state. See State of Wyoming ex rel. Wyoming Agricultural College v. Irvine, 206 U.S. 278, 27 S.Ct. 613, 51 L.Ed. 1063. See also Hamilton v. Regents of the University of California, 293 U.S. 245, 55 S.Ct. 197, 79 L.Ed. 343.

Finally, bearing in mind that the Legislature has the duty to fix the public policy of our State so long as it does not infringe upon our constitution or the Federal constitution, and there being no statute imposing upon the Board of Directors of the College the requirement that they admit girls as students, it is our view that it was and is the intention of the Legislature to leave the matter to the discretion of the Board of Directors. Moreover, we think the purpose of the framers of the Constitution in declaring in Sec. 13 of Art. VII that the College is "a Branch of the University of Texas" was to enable the College to share in the land provided for the University in the constitution. It was not the purpose of the Legislature to make the College an integral part of the University so as to disable the Legislature from enacting, in its wisdom, appropriate laws for the independent governing, control and administration of such College, or with any other design than to enable it to share in the land endowment provided for the University by the constitution. The statutes thereafter enacted by the Legislature support this view. Assuming, without deciding, that the provisions of the Constitution made the College an integral part of the University for all purposes, certainly the Legislature would still have full power and authority to make such laws as it thought necessary for the independent government, control and administration of such College, and through such laws would have the power to leave the regulation of the government, control, administration and management to the Board of Directors. Since there is no plain, certain and positive law imperatively requiring the Board of Directors of the College to admit girls as students, it is obvious that the writ of mandamus is not available to appellees and the court erred in granting such writ.

Appellants' fourth point complains of the error of the trial court in overruling appellants' plea to the jurisdiction and their plea in abatement, and also their special exceptions to appellees' trial petition, and appellants contend that such action erroneously allowed appellees to plead mere conclusions of law rather than facts sufficient to show that appellees have a clear right to the writ of mandamus.

 In appellees' first amended original petition we find the following allegations concerning the eligibility of appellees to attend the College, and we quote from Paragraph 6 of such pleading:

"It is further alleged that the Relators are qualified for entry in said college, having graduated from accredited Texas high schools, with proper grades, and as Texas citizens they are entitled to be registered into said college as students just as a male citizen of Texas is entitled to be entered; that males are born with no right of educational preference; that relators have made application for matriculation and they have attempted to register as students in said college, by applying to the Registrar of the College, the required and usual mode of entry, and they have been unequivocally informed that they were not permitted, and would not be admitted as students in said college, because the same was an institution solely for male students, and they have and are now being excluded by the college and by the Board of Directors of the school, solely on grounds of sex, and upon no other ground whatsoever, and they have been advised by the President of the college that further action would be futile, in view of the 'all-male' resolution, and advised of said resolution."

We are of the view that the special exceptions levied at the clause "that the Relators are qualified for entry in said college, having graduated from accredited Texas high schools, with proper grades," are conclusions of the pleader and the special exceptions thereto should have been sustained. We are also of the view that the clause "they have attempted to register as students in said college, by applying to the Registrar of the college, the required and usual mode of entry" is a conclusion of the pleader and that the special exceptions thereto should have been sustained. However, we are of the further view that the court correctly overruled the appellants' exceptions to the clause "solely on the ground of sex and upon no other ground whatsoever" because when that clause is read in connection with the remainder of the sentence, we think such allegation was sufficient for the trial court to let plaintiffs develop what they had done and what they stood ready to do in view of the fact that the allegation states that they had been advised by the President of the College that further action would be futile. We believe, under the above view, that appellees were entitled to tender such testimony as they had touching their alleged rights and qualifications to enter the University, because our Supreme Court in Womack v. Berry, Tex., 291 S.W.2d 677, 682, point 5, said: "The rule denying mandamus with respect to matters of a discretionary character is not without limitation, however, and the writ may issue in a proper case to correct a clear abuse of discretion." (Citing a long list of cases.) However, we think appellees' evidence wholly failed to show that the Board had abused its discretion. That leads us to say that it is our view that the judgment of the trial court has no support in the evidence, nor in the Constitution of the United States, nor in the Constitution of the State of Texas, nor under the statutes duly enacted by the Legislature for the government and control and regulation of the College.

Believing that the court erred in granting appellees the relief he did by awarding them a mandatory injunction, his action in so doing is reversed and the judgment is here rendered for appellants.

HALE, J., took no part in the consideration and disposition of this case.