

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

December 7, 1962

William A. Harrison
Commissioner of Insurance
State Board of Insurance
Austin, Texas

Opinion No. WW-1484

Re: Basis for taxes collected under
Articles 3.25 and 3.59 of the
Texas Insurance Code.

Dear Mr. Harrison:

In your recent letter you request an opinion of this office construing Articles 3.25 and 3.59 of the Texas Insurance Code, to determine the correct basis for taxes due from foreign life insurance companies seeking to be re-admitted to Texas. For many years the Insurance Department has construed Articles 3.25 and 3.59 to require foreign life insurance companies seeking re-admission to do business in Texas to pay taxes on the basis of premiums collected from citizens of Texas only on policies written by such company during the period of time that such company formerly was authorized to do business in Texas. Recently, according to your letter, the question has arisen whether the foreign life insurance company seeking re-admission should also have to pay taxes on its policies of insurance on lives of persons who have moved to Texas subsequent to the departure from Texas of the particular life insurance company.

It is the opinion of this office that the long-standing construction of Articles 3.25 and 3.59 is correct, -- that the tax owing by a foreign life insurance company seeking re-admission is computed on the basis of premiums collected from citizens of Texas only on policies written by such company during the period of time that such company formerly was authorized to do business in Texas.

Article 3.59 reads as follows:

"Any life insurance company which has heretofore been, may now be, or may hereafter be, engaged in writing policies of insurance upon the lives of citizens of this State, which has heretofore ceased, or may hereafter cease writing such policies, and which does not now or may not hereafter have a

certificate of authority to transact the business of life insurance in this State, but which has continued or may continue to collect renewal or other premiums upon such policies, shall, before it may again obtain a certificate of authority to transact the business of life insurance in this State, report under oath to the Board of Insurance Commissioners the gross amount of premiums so collected from citizens of this State upon policies of insurance during each calendar year since the end of the period covered by the last preceding report by such company of gross premium receipts upon which it paid an occupation tax, and shall pay to the State a sum equal to the percentage of its gross premium receipts for each such year that was required by law to be paid as occupation taxes by companies doing business in this State, during such year or years; and, upon the payment of such sum and securing a certificate of authority to do business in this State, the penalties provided for the failure to pay such taxes and make such report in the past shall be remitted. "

Article 3.25 reads as follows:

"Each life insurance company not organized under the laws of this State, hereafter granted a certificate of authority to transact business in this State, shall be deemed to have accepted such certificate and to transact such business hereunder subject to the conditions and requirements that, after it shall cease to transact new business in this State under a certificate of authority, and so long as it shall continue to collect renewal premiums from citizens of this State, it shall be subject to the payment of the same occupation tax in proportion to its gross premiums during any year, from citizens of this State, as is or may be imposed by law on such companies transacting new business within this State, under certificates of authority during such year. The rate of such tax to be so paid by any such company shall never exceed the rate imposed by law upon insurance companies transacting business in this State. Each such company shall make the same reports of its gross premium receipts for each such year and within the same period as is or may be required of such companies holding

certificates of authority and shall at all times be subject
to examination by the Board of Insurance Commissioners
or some one selected by it for that purpose, in the same
way and to the same extent as is or may be required of
companies transacting new business under certificates of
authority in this State, the expenses of such examination to
be paid by the company examined. The respective duties
of the Board in certifying to the amount of such taxes and
of the State Treasurer and Attorney General in their
collection shall be the same as are or may be prescribed
respecting taxes due from companies authorized to trans-
act new business within this State."

As stated previously, the Insurance Department has long con-
strued these articles and their predecessors to mean that an insurance
company seeking re-admission must pay taxes on all of those pre-
miums paid on policies sold to citizens of Texas during the time that
the particular company had a permit to do business in Texas. Of
course, under this interpretation, the basis for this tax would not
include premiums paid on policies of persons who moved to Texas
after the particular insurance company had left the state.

The phrase in Article 3.59, ". . .which has continued or may
continue to collect renewal on other premiums upon such policies,"
apparently refers to those policies sold to citizens of Texas by the
foreign life insurance company during the time it was doing business
in Texas. A close study of the legislative history and interpretation
of Articles 3.25 and 3.59 do not reveal a contrary intention. See
Attorney General Opinion O-5438, p. 12. The long-standing depart-
mental construction of Articles 3.25 and 3.59 is entitled to consider-
able weight in this decision. It is also significant that the construc-
tion by the Insurance Department was uniform prior to and subse-
quent to the adoption of the Texas Insurance Code in 1951, since an
elementary rule is that re-enactment or re-codification of a statute
after adoption of an administrative construction gives legislative
sanction to the administrative construction and tends to strengthen
that construction. Heaton v. Bristol, 317 S.W.2d 86, (Civ. App.,
error ref., 1958); Texas Employers Insurance Association v. Holmes,
145 Tex. 158, 196 S.W.2d 390 (1946).

## SUMMARY

Under Articles 3. 25 and 3. 59, a foreign life insurance company seeking re-admission to do business in Texas must pay a sum in taxes on the basis of premiums collected from citizens of Texas only on policies written by such company during the period of time that the company was formerly authorized to do business in Texas.

Very truly yours,

WILL WILSON
Attorney General of Texas

By _____
Bob E. Shannon
Assistant Attorney General

BES:lmc

APPROVED:

OPINION COMMITTEE:

W. V. Geppert, Chairman
Pat Bailey
L. P. Lollar
Tom Peterson

REVIEWED FOR THE ATTORNEY GENERAL
BY: Leonard Passmore