

# THE ATTORNEY GENERAL
# OF TEXAS

WAGGONER CARR
ATTORNEY GENERAL

AUSTIN 11, TEXAS

March 11, 1965

Honorable John B. Connally
Governor of Texas
Austin, Texas

Opinion No. C-400

Re: Whether the control and
administration of Arlington
State College may be trans-
ferred from the Texas A&M
University System to The
University of Texas System
by Legislative Act.

Dear Governor Connally:

Your request for an opinion poses the following question:
". . . may the control and administration of Arlington State Col-
lege be transferred from the Texas A&M University System to The
University of Texas System by Legislative Act?"

Arlington State College was established by the provisions
of Chapter 97, Acts of the 35th Legislature, Regular Session, 1917.
Sections 1, 2, 6 and 7 of the 1917 Act provided:

"Section 1.  That there is hereby establish-
ed a Junior Agricultural, Mechanical and Indus-
trial College, to be known as the Grubbs Vocation-
al College, to be located at or near the town of
Arlington, Tarrant County, Texas, provided the
citizens of said town and county shall first do-
nate to the State for the use and benefit of said
college at least one hundred acres of good tillable
land with perfect title, together with the college
property, known as the Carlisle Military School
property, with all buildings, dormitories, barracks,
etc., belonging thereto.

"Sec. 2.  Be it further enacted that said
Junior Agricultural, Mechanical and Industrial Col-
lege shall be under the direction of the board of
directors of the present Agricultural and Mechanic-
al College in connection with a local board of
managers composed of five members to be appointed

by the Governor by and with the advice and
consent of the Senate, who shall serve for
two years from the date of their appointment."

"Sec. 6.  That the board of managers shall
have and possess all powers necessary subject to
the supervision of the board of directors of the
Agricultural and Mechanical College of Texas as
to accomplish and carry out the provisions of this
Act the establishment of a Junior Agricultural,
Mechanical and Industrial College for the educa-
tion of white boys and girls in this State in the
arts and sciences in which such boys and girls may
acquire a good literary education of academic
grade, at least, together with a knowledge of agri-
culture, horticulture, floriculture, stock raising
and domestic arts and sciences, including the sev-
eral branches and studies usually taught in the
established institutions of like character with such
limitations as may be imposed by the governing board
of the Agricultural and Mechanical College of Texas,
having in view the training of the youth for the more
important industrial activities of life, while acquir-
ing facilities for the acquirement of a good practi-
cal literary education not below the academic grade.

"Sec. 7.  That the board of managers in connec-
tion with the board of directors of the Agricultural
and Mechanical College of Texas, shall appoint a
president and professors of the Grubbs Vocational
College and such officers as they may think proper
and necessary to put the same into successful opera-
tion and to make such rules and regulations for the
government of said officers and the proper manage-
ment of said institution as they may deem advisable.
They shall regulate rates of tuition with the course
of discipline necessary to enforce the faithful dis-
charge of the duties of all officers, professors and
students.  They shall in connection with the faculty
divide the courses of instruction into departments so
as to secure a thorough education of the academic
grade and the best possible industrial training, se-
lecting careful and efficient professors in each
department, giving preference to Texas teachers, if
available, and shall adopt all such rules, by-laws
and regulations as they may deem necessary to carry
out all the purposes and objects of said institu-
tions."

The provisions of the 1917 Act were codified in the 1925 revision as Chapter 4 of Title 49 of the Revised Civil Statutes of Texas, 1925 (Articles 2620 et seq.). Article 2620, Revised Civil Statutes of Texas, 1925, read in part as follows:

> "The North Texas Junior Agricultural, Mechanical and Industrial College at Arlington shall be under the direction of the board of directors of the Agricultural and Mechanical College designated herein the supervisory board in connection with a local board of managers composed of five members to be appointed by the Governor, subject to the approval of said supervisory board, by and with the advice and consent of the Senate, who shall serve for two years from the date of their appointment. Said local board shall perform all the duties required in the management of said College in like manner as governing boards of the same character. Said local board shall meet at Arlington as soon after their appointment as convenient and organize by the election of a presiding officer, a secretary and a treasurer. The supervisory board shall determine the compensation to be paid said local board."

The 1925 codification changed the name of the College to North Texas Junior Agricultural, Mechanical and Industrial College at Arlington. Article 2620 of the Revised Civil Statutes of Texas, 1925, was amended by Chapter 459, Acts of the 51st Legislature, Regular Session, 1949, changing the name of the North Texas Junior Agricultural, Mechanical and Industrial College at Arlington to Arlington State College. Section 2 of Article 2620, as thus amended, reads as follows (compiled in Vernon's as Article 2620a):

> "The dual system of Governing Boards for said institution, comprising a supervisory board and a board of local managers, heretofore established by law, is abolished. The said Arlington State College shall be under the direction of the Board of Directors of the Agricultural and Mechanical College of Texas and said Board shall perform all the duties required in the management of said College in like manner as Governing Boards of the same character. The duties, rights and powers imposed and conferred by law on the former Boards are transferred to the said Board of Directors of the Agricultural and Mechanical College; provided that it shall be the duty of said Board to operate, manage and

> direct said Arlington State College in accord-
> ance with the laws of this state and in keeping
> with the objectives established by the Legisla-
> ture for said institution."

Thus the control and administration of Arlington State College, from the Board of Managers, created by the 1917 Act, was transfer- red to the Board of Directors of the Agricultural and Mechanical College (now the Texas A&M University System).

A study of the foregoing statutory provisions reveals that the institution of higher learning known as Arlington State College has been from its inception, and remains, an institution of higher learning created and operated pursuant to legislative acts, rather than constitutional provisions.

Likewise, the power of the governing board of the Texas A&M University System to control and administer institutions of high- er learning comprising the System is derived from legislative acts rather than constitutional provisions. Heaton v. Bristol, 317 S.W. 2d 86 (Tex.Civ.App. 1958, error ref., cert.den., appeal dism., 79 S.Ct. 802, 359 U.S. 230, reh.den., 79 S.Ct. 1123, 359 U.S. 999). After reviewing the statutory powers of the Board of Directors of Texas A&M University and the powers of the Board of Regents of The University of Texas, the Court, in Heaton v. Bristol, construed the provisions of Section 13 of Article VII of the Constitution of Texas, declaring the Agricultural and Mechanical College of Texas "a branch of the University of Texas," as follows:

> ". . . Moreover, we think the purpose of the
> framers of the Constitution in declaring in Sec.
> 13 of Art. VII that the College is 'a Branch of
> the University of Texas' was to enable the Col-
> lege to share in the land provided for the Univer-
> sity in the constitution. It was not the purpose
> of the Legislature to make the College an integral
> part of the University so as to disable the Legis-
> lature from enacting, in its wisdom, appropriate
> laws for the independent governing, control and ad-
> ministration of such College, or with any other de-
> sign than to enable it to share in the land endow-
> ment provided for the University by the constitu-
> tion. The statutes thereafter enacted by the Legis-
> lature support this view. Assuming, without de-
> ciding, that the provisions of the Constitution made
> the College an integral part of the University for
> all purposes, certainly the Legislature would still
> have full power and authority to make such laws as

it thought necessary for the independent
government, control and administration of
such College, and through such laws would
have the power to leave the regulation of
the government, control, administration and
management to the Board of Directors. . . ."
(Emphasis added). 317 S.W.2d 86, 100.

It is our opinion that the provisions of Section 18 of Article VII of the Constitution of Texas, designating Arlington State College at Arlington an institution of higher learning authorized to participate in the building fund created by the provisions of Section 18 of Article VII, should be construed in the same manner as the provisions of Section 13 of Article VII were construed in Heaton v. Bristol, supra. It was not the purpose of Section 18 of Article VII to "disable the Legislature from enacting, in its wisdom, appropriate laws for the independent governing, control and administration" of institutions of higher learning named therein. In this connection, it was further pointed out in Heaton v. Bristol, supra:

"The Texas system of higher education, as
it exists today, is comprised of 18 institutions
fully supported by State funds. Each of these
institutions, with the exception of A. & M. and
Texas Women's University, is open to both sexes
and has remained open to qualified members of each
sex since the date of founding. A. & M. is only
one part of the whole system, just as Texas Women's
University is just a single part of the same sys-
tem, along with the University of Texas and the
other State colleges. No single college or uni-
versity was established to serve the full and
varied academic needs of the State, but the sys-
tem, which includes each individual institution,
fulfilling the respective objects of its creation,
has been established to meet and fill the total
and diverse educational needs of the State. . . .
The Legislature in its wisdom has seen fit to af-
ford to the individual the widest possible choice
in the selection of a college or university.
. . ." 317 S.W.2d 86, 98.

Since Arlington State College was created by statute and operated pursuant to statutory provision, rather than any constitutional provision, and since the Board of Directors of Texas A&M University System derives its powers from acts of the Legislature, you are advised that the control and administration of Arlington State College may be transferred from the Texas A&M

University System to The University of Texas System by legislative act.

Participation in the building fund created by Section 18 of Article VII by Arlington State College cannot be changed by legislative act. Any expenditure of monies derived pursuant to Section 18 of Article VII for constructing, equipping or acquiring buildings or other permanent improvements for Arlington State College must be by the Board of Directors of Texas A&M University rather than by the Board of Regents of The University of Texas System and this requirement cannot be transferred by legislative act but can be accomplished only by a constitutional amendment.

SUMMARY

The control and administration of Arlington State College may be transferred from the Texas A&M University System to The University of Texas System by legislative act.

Participation in the building fund created by Section 18 of Article VII of the Texas Constitution by Arlington State College cannot be changed by legislative act. Any expenditure of monies derived pursuant to Section 18 of Article VII for constructing, equipping or acquiring buildings or other permanent improvements for Arlington State College must be by the Board of Directors of Texas A&M University rather than by the Board of Regents of The University of Texas System and this requirement cannot be transferred by legislative act but can be accomplished only by a constitutional amendment.

Yours very truly,

WAGGONER CARR
Attorney General

By _John Reeves_
John Reeves
Assistant

JR:ms

APPROVED:

OPINION COMMITTEE

W. V. Geppert, Chairman
J. C. Davis
H. Grady Chandler
J. S. Bracewell
Joe Long

APPROVED FOR THE ATTORNEY GENERAL
By: Stanton Stone