

# THE ATTORNEY GENERAL
## OF TEXAS

**AUSTIN, TEXAS 78711**

JOHN L. HILL
ATTORNEY GENERAL

December 7, 1973

The Honorable Robert S. Calvert
Comptroller of Public Accounts
State Finance Building
Austin, Texas

Opinion No. H- 176

Re: Whether tax reimburse-
ments made by purchaser
to producers of gas for
production tax in effect
at the time the gas-sale
contract is executed shoul
be considered a part of th
producer's gross cash
receipts.

Dear Mr. Calvert:

You have requested an opinion of this office concerning a construction
of Article 3.02(1), V.T.C.S., Taxation-General, defining "market value"
for computation of the natural gas tax established in Article 3.01, V.T.C.S.,
Taxation-General. The applicable portion of the statute is:

> "The market value of gas produced in this State
> shall be the value thereof at the mouth of the well;
> however, in case gas is sold for cash only, the tax
> shall be computed on the producer's gross cash receipts.
> Payments made by purchasers to producers for the pur-
> pose of reimbursing such producers for taxes due here-
> under shall not be considered a part of the producer's
> gross cash receipts." (emphasis added)

You have advised us of your departmental construction:

> "It has been the construction of this department
> that the exclusion of a tax reimbursement from a producer's
> gross cash receipts for tax purposes applies only to a tax
> reimbursement for all or a part of an increase in the rate

of natural gas tax, which increase becomes effective
subsequent to the date of the contract and while such
contract is in effect.

"Most gas-sale contracts are executed for a
long period of time, and a tax reimbursement provi-
sion in the contract protects the producer from having
his receipts from the sale of gas being reduced by
increases in the production tax.

"It has been the position of this department
that where a gas-sale contract is executed, including
a reimbursement for all or a part of the production
tax in effect at the time the contract is executed, the
tax reimbursement becomes a part of the commodity
price and, therefore, should be included as a part of
the producer's taxable receipts."

We agree with the construction of your department.

The tax is levied on the "market value" of the gas produced. Article
3.01, supra. Presumably a purchaser will not pay more than the market
value, nor will a producer, ordinarily, agree to accept less. Thus, if a
purchaser agrees to pay a price which includes the natural gas production
tax in existence at the time of the contract, it can be assumed that the
purchaser and the producer have determined that total figure to be the
actual market value of the gas. The contemplated effect is that the pur-
chaser pays no more than the actual market value; the producer receives
the market value but hopes to pay less tax because he does not expect to
pay a tax upon that portion of the market value which he denominates
"reimbursement for taxes". By the same token, the State of Texas receives
less tax revenue than it should were the tax based on the true market value.

On the other hand, as you say, an agreement by a purchaser to pay
all or a part of tax increases during the contract period which in many cases
will be a long period of time, can be construed as a legitimate effort to
protect the producer from having his receipts from the sale of gas reduced
by increases in the production tax.

The exclusion in the second sentence of Article 3.02(1) applies only when the payments are made "for the purpose of reimbursing such producers for taxes." We believe that the only payments a purchaser would make for that purpose would be in connection with tax increases, so that the producer's future receipts would not be diminished by such tax increases. Any other payments, whether called "tax reimbursement" or not, would be part of the market value of the gas and would be for the sole purpose of circumventing a portion of the tax, and in no way for the purpose specified by statute.

Our interpretation of the statutory language has been greatly influenced by the long established interpretation given it by your department. Stanford v. Butler, 181 S.W.2d 269 (Tex. 1944); Burroughs v. Lyles, 181 S.W.2d 570 (Tex. 1944); Heaton v. Bristol, 317 S.W.2d 86 (Tex. Civ. App., Waco, 1958, err. ref'd.) cert. denied, 359 U.S.230.

If the statute is not interpreted as you have interpreted it, and as we interpret it above, it is discriminatory, in that it rewards with lower taxes parties who are willing to semantically assign a part of market value to a fictitious "reimbursement for taxes" while parties with non-fictional contracts pay the full tax, a result we know the Legislature did not intend.

### SUMMARY

The language in Article 3.02, V.T.C.S., Taxation-General, allowing deduction from taxable receipts of payments made by the purchaser for the purpose of reimbursing the producer for taxes does not allow deduction of payments made under an agreement to pay the taxes in existence at the time of the contract.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee