Mrs. Jo Anne KIRSTEIN, Miss Virginia Anne Scott, Miss Nancy L. Anderson, Mrs. Nancy Jaffe, and United States National Student Association, Plaintiffs,

v.

The RECTOR AND VISITORS OF the UNIVERSITY OF VIRGINIA, etc., The Honorable Mills E. Godwin, Dr. Woodrow W. Wilkerson, Edgar F. Shannon, Jr., Ernest H. Ern, and State Council of Higher Education for Virginia, Defendants.

Civ. No. 220–69.

United States District Court,
E. D. Virginia,
Richmond Division.

Heard Dec. 17, 1969.

Decided Feb. 9, 1970.

Michael Nussbaum, Surrey, Karasik, Gould & Greene, Washington, D. C., John C. Lowe, Charlottesville, Va., and Philip J. Hirschkop, Alexandria, Va., for plaintiffs.

Robert Y. Button, Atty. Gen. of Virginia, Richard N. Harris, Asst. Atty. Gen. of Virginia, and James H. Michael, Jr., Michael & Dent, Charlottesville, Va., for defendants.

Before CRAVEN, Circuit Judge, and MacKENZIE and MERHIGE, District Judges.

CRAVEN, Circuit Judge:

This is a suit brought by four young women to compel their admission to the College of Arts and Sciences of the University of Virginia at Charlottesville. It is also brought as a class action for the benefit of other persons similarly situated. All of the individual defendants, except the Governor and the State Superintendent of Public Instruction, are officers and trustees of the University of

Virginia at Charlottesville. The officers and trustees of other Virginia educational institutions are not parties.

From oral testimony, voluminous documentary evidence, pleadings, and statements of counsel in open court, we find the controlling facts to be:

The following colleges and universities are operated by the Commonwealth of Virginia (all are presently coeducational to some extent except as indicated):

The University of Virginia at Charlottesville (the admission of women is more fully discussed below)

Patrick Henry College of the University of Virginia

The Eastern Shore Branch of the School of General Studies of the University of Virginia

George Mason College

Clench Valley College

Mary Washington College of the University of Virginia (women only)

Radford College (women only)

Virginia Military Institute (men only)

Virginia Polytechnic Institute

Longwood College (women only)

Madison College

Norfolk College

Old Dominion College

Virginia Commonwealth University

Virginia State College at Petersburg

William and Mary College

Christopher Newport College

Richard Bland College

Thirteen coeducational community colleges are also operated by the Commonwealth of Virginia.

Until recently the University of Virginia at Charlottesville was substantially an all-male institution. It is difficult to evaluate the quality of education. Without attempting to do so, we think it fair to say from the evidence that the most prestigious institution of higher education in Virginia is the University of Virginia at Charlottesville, despite the apparent high quality of education offered at other Virginia institutions. The University of Virginia at Charlottesville is by far the largest educational institution, and its diversity of instruction is not paralleled in Virginia.

At the first hearing of this case we indicated our reluctance to interfere with the internal operation of any Virginia college or university, and particularly that of the University of Virginia at Charlottesville. We expended our best efforts to encourage the litigants to agree upon a consent judgment that might satisfactorily implement the Board of Visitors' contemplated changes in structure and nature of the University of Virginia at Charlottesville. We were impressed with the so-called Woody Commission report and its strong recommendation that sex barriers to admission to any Virginia institution of higher education be removed. In the context of long established separation by sex in institutions of learning, we were most favorably impressed with the willingness of the authorities controlling Virginia higher education to innovate and favorably entertain the relatively new idea that there must be no discrimination by sex in offering educational opportunity.

Since the Richmond hearing, there has been submitted to the court the University Board of Visitors' resolution of October 3, 1969, which adopts a plan for the admission of women on an equal basis with men to the University of Virginia at Charlottesville. In order to smoothly adjust the dislocations to be caused by increased numbers of women on a campus that has been substantially all-male, the plan provides for a three-stage change in admission policies: (1) 450 women will be admitted in September 1970, (2) an additional 550 women will be admitted in September 1971, and (3) women will be admitted on precisely the same basis as men beginning in September 1972 with no limitation thereafter on the number of women admitted.

Plaintiffs have filed objections to the plan, but it is quite significant that their objections do not relate to the merits or even to the speed of the plan with respect to the University of Virginia at Charlottesville. Instead, plaintiffs insist that there is no assurance that the plan will ever be permanently effectuated because final authority rests with the Legislature of Virginia and because the plan may be undone by future boards of visitors. Plaintiffs' other ground of objection is that the plan does not solve the question of sex discrimination at other institutions of higher education and is limited to the University of Virginia at Charlottesville.

■ The pattern of separation by sex of educational institutions is a long established one in America and a system widely and generally accepted until the last decade. Despite this history, it seems clear to us that the Commonwealth of Virginia may not now deny to women, on the basis of sex, educational opportunities at the Charlottesville campus that are not afforded in other institutions operated by the state.[1] Unquestionably the facilities at Charlottesville do offer courses of instruction that are not available elsewhere. Furthermore, as we have noted, there exists at Charlottesville a "prestige" factor that is not available at other Virginia educational institutions. These particular individual plaintiffs are not in a position, without regard to the type of instruction sought, to go elsewhere without harm to themselves and disruption of their lives. Two of the plaintiffs are married to graduate students who must remain at the University of Virginia at Charlottesville. A pattern of continued sex restriction would present these plaintiffs with the dilemma of choosing between the marriage relationship and further education. We think the state may not constitutionally impose upon a qualified young woman applicant the necessity of making such a choice.

■ The plain effect of the Equal Protection Clause of the Fourteenth Amendment is "to prohibit prejudicial disparities before the law. This means prejudicial disparities for all citizens— including women." White v. Crook, 251 F.Supp. 401, 408 (M.D.Ala.1966) (holding that women may not be denied the right to jury service). Abbott v. Mines, 411 F.2d 353 (6th Cir. 1969) (women's right to jury service); United States ex rel. Robinson v. York, 281 F.Supp. 8 (D.Conn.1968) (women's right to sentencing on equal basis with men). We hold, and this is all we hold, that on the facts of this case these particular plaintiffs have been, until the entry of the order of the district judge,[2] denied their constitutional right to an education equal with that offered men at Charlottesville and that such discrimination on the basis of sex violates the Equal Protection Clause of the Fourteenth Amendment.

■ We are urged to go further and to hold that Virginia may not operate any educational institution separated according to the sexes. We decline to do so. Obvious problems beyond our capacity to decide on this record readily occur. One of Virginia's educational institutions is military in character. Are women to be admitted on an equal basis, and, if so, are they to wear uniforms and be taught to bear arms? See, Allred v. Heaton, Tex.Civ.App., 336 S.W.2d 251, cert. denied, 364 U.S. 517, 81 S.Ct. 293, 5 L.Ed.2d 265 (1960); Heaton v. Bristol, Tex.Civ.App., 317 S.W.2d 86, cert. denied, 359 U.S. 230, 79 S.Ct. 802, 3 L. Ed.2d 765 (1958). Some of Virginia's educational institutions have thus far been attended only by persons of the female sex. We think that *these* plaintiffs lack standing to challenge discrimination

1. We need not decide on the facts of this case whether the now discountenanced principle of "separate but equal" may have lingering validity in another area—for the facilities elsewhere are not equal with respect to these plaintiffs.

2. By preliminary order on September 8, 1969, United States District Judge Robert R. Merhige, Jr., ordered the University at Charlottesville to consider without regard to sex plaintiffs' applications for admission.

in such institutions. They are not harmed by the operation of an all-female institution that they do not wish to attend. Whether women attending such an institution are harmed by the absence of male students is, on this record, hypothetical. This and similar questions can better be determined in a case involving male applicants who sincerely wish to enter an all-female school, or female students at the school who believe it should be coeducational, and the governing authorities of the school, who may present the opposing viewpoint. We note, of course, that one of the parties plaintiff is the National Student Association. Although a proper party, we think that even this association cannot sharpen for us the questions that arise with respect to whether or not there may, under any circumstances, be continued operation of schools separated according to sex.

■ The Board of Visitors of the University of Virginia at Charlottesville has made easy for us the proper disposition of this case. Within the limited constitutional duty which we have adjudged, it is beyond argument that the plan to implement the right of women applicants to attend the University of Virginia at Charlottesville is constitutionally adequate. Substantial numbers of women are to be admitted next fall and an even greater number the year following, with no limitation whatsoever thereafter. Any change in the method of operation of an institution as large as the University of Virginia at Charlottesville is bound to take ·some time. "It is not uncommon for courts, when declaring constitutional rights not previously recognized and declared, to delay for a reasonable time, in consideration of practical problems incident to the implementation of those rights, the actual exercise of the newly declared right." White v. Crook, 251 F.Supp. 401, n. 16 (M.D.Ala.1966), citing Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), and Brown v. Board of Education of Topeka Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954).

This time schedule seems to us far more than deliberate and, indeed, reflects a genuine intent and purpose on the part of the authorities to make the University of Virginia at Charlottesville coeducational as soon as is reasonably feasible. The plan as a whole is in keeping with the trend toward coeducation now apparent among many colleges and universities that once admitted only one sex, but now admit both. We approve the plan as proposed by the Board of Visitors.

■ It is urged upon us that even if the constitutional rights of Women are now being recognized by the University of Virginia at Charlottesville, the plaintiffs are nevertheless entitled to damages and to an injunction. Despite concern voiced by the plaintiffs, we are convinced that the plan will be put into effect. Therefore, no injunction is necessary. Plaintiffs seek damages under the Civil Rights Act, 42 U.S.C. § 1983 (1964). Congress did not intend to bring municipal corporations or states within the ambit of liability created by Section 1983. Sires v. Cole, 320 F.2d 877 (9th Cir. 1963). See, Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Therefore, the defendant bodies corporate, which are agencies of state government, are not amenable to damages under Section 1983. Nor are the individual defendants liable for damages. A government official, acting within the scope of his authority, is not liable for damages resulting from his performance of a discretionary function. Norton v. McShane, 332 F.2d 855 (5th Cir. 1964); Papagianakis v. The Samos, 186 F.2d 257 (4th Cir. 1950); Gregoire v. Biddle, 177 F.2d 579 (2d Cir. 1949). See, Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed. 2d 1434 (1959). The defendant public officials clearly exercised a discretionary duty imposed upon them by Virginia statute when they formulated the admission policies for the University of Virginia at Charlottesville. The doctrine of official immunity "may be given more limited application" in suits under

Section 1983.[3]  Norton v. McShane, supra, 332 F.2d at 861.  The purpose of Section 1983 is "to provide a federal remedy for the deprivation of federally guaranteed rights in order to enforce more perfectly federal limitations on unconstitutional state action.  To hold all state officers immune from suit would very largely frustrate the salutary purpose of this provision."  Jobson v. Henne, 355 F.2d 129, 133 (2d Cir. 1966).  The defense of official immunity should be "applied sparingly in suits brought under § 1983."  Id. at 134.  Nevertheless, it should be available to public officials who act in unquestioned good faith and in perfect accord with long standing legal principle only to find their discretionary conduct declared illegitimate under a later constitutional interpretation.  In an analysis of the immunity doctrine, Judge Learned Hand stated that its purpose is to encourage conscientious public officials by not "exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors."  Gregoire v. Biddle, supra, 177 F.2d at 581.  In balancing the immunity doctrine against the purpose of Section 1983, we think that no violence to the latter will be done by the application of the former here.  Indeed, to hold public officials liable for acts that become unconstitutional *ex post facto* would tend to reduce popular respect for federally guaranteed rights rather than increase it.  The admissions policy formulated by the University Board of Visitors and acquiesced in by the other defendants was in contravention of no clear constitutional principle when adopted.  We hold that plaintiffs are not entitled to damages under Section 1983.

For the reasons stated, plaintiffs' suit will be ordered dismissed as moot, provided, however, that upon motion, and for good cause shown within one year of date of dismissal, the action may be reinstated.

Dismissed.

---

3.  Judicial and legislative immunity are unaffected by 42 U.S.C. § 1983 (1964). *E. g.*, Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) ; Dombrowski v. Burbank, 123 U.S.App.D.C. 90, 358 F.2d 821 (1966) reversed on other grounds 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967).