D. Reece WILLIAMS, III, as Guardian ad Litem for Mr. Samuel Kirk Covington, Mr. Frank Osborne Deaton, Mr. Elbert Randolph Devinney, Mr. Eddie Leavohn Guy, Mr. Michael Warner Hoskins, Mr. David Franklin Johnson, Jr., Mr. Roger Darrell Myers, Mr. Ronnie Edward Nichols, Mr. James Alvin Sorrow, Jr.; and Mr. Charles David Meeler, Plaintiffs,

v.

The Honorable Robert E. McNAIR, Governor of the State of South Carolina, Chairman of the Board, Cyril B. Busbee, State Superintendent of Education, The Honorable James P. Mozingo, III, Chairman of The Senate Committee on Education, The Honorable Harold D. Breazeale, Chairman of the House Committee on Education, Howard L. Burns, John H. Martin, B. D. McDonald, Mrs. James W. Godfrey, Brown Mahon, Mrs. Stiles Stribling, William H. Grier, Mrs. Legare Hamilton, John T. Roddey, Being the Trustees of Winthrop College, Defendants.

No. 70-512.

United States District Court,
D. South Carolina,
Rock Hill Division.

Argued Aug. 3, 1970.

Decided Aug. 24, 1970.

Terrell L. Glenn and Charles Porter, Glenn & Porter, Columbia, S. C., for plaintiffs.

Daniel R. McLeod, Atty. Gen., C. Tolbert Goolsby, Jr., Michael W. Tighe, Asst. Attys. Gen., for defendants.

Before HAYNSWORTH, Chief Judge, and HEMPHILL and RUSSELL, District Judges.

DONALD RUSSELL, District Judge:

This is an action instituted by the plaintiffs, all males, suing on behalf of themselves and others similarly situated, to enjoin the enforcement of a State statute[1] which limits regular admissions to Winthrop College, a State supported college located at Rock Hill, South Carolina, to "girls".[2] They assert that, except for their sex, they fully meet the admission requirements of the college.

The defendants are the present members of the Board of Trustees of Winthrop College, as constituted under its enabling legislation.

Jurisdiction is predicated on Sections 1343 and 2284, 28 U.S.C., and Section 1983, 42 U.S.C. Since plaintiffs seek to restrain the enforcement of a State statute, a three-judge District Court was designated to hear the action in conformity with the provisions of Sections 2281 and 2284, 28 U.S.C. See Phillips v. United States (1941) 312 U.S. 246, 248–251, 61 S.Ct. 480, 85 L.Ed. 800.

The parties have stipulated the facts involved in the controversy and have submitted the cause to the Court on their respective motions for judgment. The stipulation of facts is adopted as the Findings of Fact herein.

It is clear from the stipulated facts that the State of South Carolina has established a wide range of educational institutions at the college and university level consisting of eight sep-

---

1. Sections 401, et seq., Title 22, Code of Laws of South Carolina (1962).

2. The statute creating Winthrop bars male students by implication and not by express language. The Attorney General of South Carolina, in an official opinion, has ruled that the statute does so bar. The plaintiffs apparently accept this construction of the statute, which seems manifestly required by the legislative purpose expressed in the statutory charter.

arate institutions, with nine additional regional campuses. The several institutions so established vary in purpose, curriculum, and location. Some are limited to undergraduate programs; others extend their offerings into the graduate field. With two exceptions, such institutions are co-educational. Two, by law, however, limit their student admissions to members of one sex. Thus the Citadel restricts its student admission to males and Winthrop, the college involved in this proceeding, may not admit as a regular degree candidate males. There is an historical reason for these legislative restrictions upon the admission standards of these two latter institutions. The first, the Citadel, while offering a full range of undergraduate liberal arts courses and granting degrees in engineering as well, is designated as a military school, and apparently, the Legislature deemed it appropriate for that reason to provide for an all-male student body. Winthrop, on the other hand, was designed as a school for young ladies, which, though offering a liberal arts program, gave special attention to many courses thought to be specially helpful to female students.[3]

The Equal Protection Clause of the Fourteenth Amendment does not require "identity of treatment" for all citizens,[4] or preclude a state, by legislation, from making classifications and creating differences in the rights of different groups.[5] It is only when the discriminatory treatment and varying standards, as created by the legislative or administrative classification are arbitrary and wanting in any rational justification that they offend the Equal Protection Clause.[6] Specifically, a legislative classification based on sex, has often been held to be constitutionally permissible. See West Coast Hotel Co. v. Parrish (1937) 300 U.S. 379, 394–395, 57 S.Ct. 578, 81 L.Ed. 703, 108 A.L.R. 1330 (statute providing minimum wages for women but not men); Radice v. New York (1924) 264 U.S. 292, 296–298, 44 S.Ct. 325, 68 L.Ed. 690 (special statute limiting hours of night work of women in cities with a particular population); Goesaert v. Cleary (1948) 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163 (proscribing use of women as licensed bartenders);[7] Hoyt v. Florida (1961) 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (jury duty voluntary for women but compulsory for men);[8] Miskunas v. Union Carbide Cor-

---

3. See Section 401, Title 22, Code of South Carolina (1962):

"There shall be established an institution for the practical training and higher education of white girls which shall be known as Winthrop College * * *."

In Section 408, Title 22, the purpose of Winthrop College was stated to be:

"The establishment, conduct and maintenance of a first-class institution for the *thorough education of the white girls of* this State, the main object of which shall be (1) to give to young women such education as shall fit them for teaching and (2) to give instruction to young women in stenography, typewriting, telegraphy, bookkeeping, drawing (freehand, mechanical, architectural, etc.), designing, engraving, sewing, dressmaking, millinery, art, needlework, cooking, housekeeping and such other industrial arts as may be suitable to their sex and conducive to their support and usefulness. Said trustees may add, from time to time, such special features to

the institution and may open such new departments of training and instruction therein as the progress of the times may require."

4. Walters v. City of St. Louis (1954) 347 U.S. 231, 237, 74 S.Ct. 505, 98 L.Ed. 660.

5. Griffin v. Board of Sup'rs of Prince Edward County (1964) 377 U.S. 218, 230, 84 S.Ct. 1226, 12 L.Ed.2d 256.

6. McGowan v. Maryland (1961) 366 U.S. 420, 426, 81 S.Ct. 1101, 6 L.Ed.2d 393.

7. Cf., McCrimmon v. Daley (7th Cir. 1969) 418 F.2d 366, 369–371; and Seidenberg v. McSorleys' Old Ale House, Inc. (D.C.N.Y.1969) 308 F.Supp. 1253, 1260. (See, Cooke's Column, WOMAN TROUBLE AT McSORLEY'S, Guardian Weekly, August 22, 1970, p. 6).

8. On the other hand, a *complete* proscription of women jurors is violative of constitutional rights. White v. Crook (D.C. Ala.1966) 251 F.Supp. 401, 408.

poration (7th Cir. 1968) 399 F.2d 847, 850, cert. denied 393 U.S. 1066, 89 S.Ct. 718, 21 L.Ed.2d 709 (denial to wife, but not to husband, of right to recover for loss of consortium);[9] Gruenwald v. Gardner (2nd Cir. 1968) 390 F.2d 591, cert. denied 393 U.S. 982, 89 S.Ct. 456, 21 L.Ed.2d 445 (women given more favorable treatment in social security benefits than men); United States v. St. Clair (D.C.N.Y. 1968) 291 F.Supp. 122 (men subject, women not, under Selective Service Act); Clarke v. Redeker (D.C. Iowa 1966) 259 F.Supp. 117 (fixing wife's residence by husband's but not the reverse); Heaton v. Bristol (Tex.Civ.App.1958) 317 S.W.2d 86, cert. denied 359 U.S. 230, 79 S.Ct. 802, 3 L.Ed.2d 765 and Allred v. Heaton (Tex.Civ.App. 1960) 336 S.W.2d 251, cert. denied 364 U.S. 517, 81 S.Ct. 293, 5 L.Ed.2d 265 (both involving denial of right of women to attend an all-male state-supported college).[10] Thus, the issue in this case is whether the discrimination in admission of students, created by the statute governing the operation of Winthrop and based on sex, is without rational justification.

It is conceded that recognized pedagogical opinion is divided on the wisdom of maintaining "single-sex" institutions of higher education but it is stipulated that there is a respectable body of educators who believe that "a single-sex institution can advance the quality and effectiveness of its instruction by concentrating upon areas of primary interest to only one sex."[11] The idea of educating the sexes separately, the plaintiffs admit, "has a long history" and "is practiced extensively throughout the world".[12] It is no doubt true, as plaintiffs suggest, that the trend in this country is away from the operation of separate institutions for the sexes, but there is still a substantial number of private and public institutions, which limit their enrollment to one sex and do so because they feel it offers better educational advantages. While history and tradition alone may not support a discrimination,[13] the Constitution does not require that a classification "keep abreast of the latest" in educational opinion, especially when there remains a respectable opinion to the contrary; it only demands that the discrimination not be wholly wanting in reason.[14] Any other rule would mean that courts and not legislatures would determine all matters of public policy. It must be remembered, too, that Winthrop is merely a part of an entire system of State-supported higher education. It may not be considered in isolation. If the State operated only one college and that college was Winthrop, there can be no question that to deny males admission thereto would be impermissible under the Equal Protection Clause. But, as we have already remarked, these plaintiffs have a complete range of state institutions they may attend. They are free to attend either an all-male or, if they wish, a number of co-educational institutions at various locations over the

---

9. See, however, Kanowitz, Constitutional Aspects of Sex-based Discrimination in American Law, 48 Neb.L.Review 131, 143–51 (1968). This article, it seems, was written prior to the denial of certiorari in *Miskunas.*

10. Of course, if there is no rational basis for the classification by sex, the legislation must fall. An instance of such a classification is involved in United States ex rel. Robinson v. York (D.C.Conn. 1968) 281 F.Supp. 8, in which it was held that differences in authorized sentences between males and females in a criminal statute was "invidious discrimination" and invalid. However, the Court prefaced its decision with the statement: "This deference to legislative classifications can extend to classifications based on sex." p. 13.

11. See Stipulations numbers 19 and 20.

12. See Admission 18 of the plaintiffs.

13. Levy v. Louisiana (1968) 391 U.S. 68, 71, 88 S.Ct. 1509, 20 L.Ed.2d 436.

14. Goesaert v. Cleary, *supra.*

State.[15] There is no suggestion that there is any special feature connected with Winthrop that will make it more advantageous educationally to them than any number of other State-supported institutions. They point to no courses peculiar to Winthrop in which they wish to enroll. It is true that, in the case of some, if not all, of the plaintiffs, Winthrop is more convenient geographically for them than the other State institutions. They, in "being denied the right to attend the State college in their home town, are treated no differently than are other students who reside in communities many miles distant from any State supported college or university. The location of any such institution must necessarily inure to the benefit of some and to the detriment of others, depending upon the distance the affected individuals reside from the institution."[16]

Under these circumstances, this Court cannot declare as a matter of law that a legislative classification, premised as it is on respectable pedagogical opinion, is without any rational justification and violative of the Equal Protection Clause.[17] It might well be that if the members of this Court were permitted a personal opinion on the question, they would reach a contrary conclusion. Moreover, it may be, as plaintiffs argue, that the experience of the college in admitting in its summer and evening classes male students, has weakened to some extent the force of the legislative determination that the maintenance of at least one all-female institution in the state system has merit educationally.[18] The evaluation of such experience, however, is not the function or prerogative of the Courts; that falls within the legislative province and the plaintiffs must address their arguments to that body and look to it for relief. After all, flexibility and diversity in educational methods, when not tainted with racial overtones, often are both desirable and beneficial; they should be encouraged, not condemned.

It is suggested by the plaintiffs that this conclusion is contrary to the ruling in Kirstein v. Rector and Visitors of University of Virginia (D.C.Va. 1970) 309 F.Supp. 184. The Court there very pointedly remarked, however, that "We are urged to go further and to hold that Virginia may not operate any educational institution separated according to the sexes. We decline to do so." Page 187, 309 F.Supp. There the women-plaintiffs were seeking admission to the University of Virginia and it was conceded that the University occupied a preeminence among the State-supported institutions of Virginia and offered a far wider range of curriculum. No such situation exists here. It is not intimated that Winthrop offers a wider range of subject matter or enjoys a position of outstanding prestige over the other

15. See Heaton v. Bristol, *supra*, where the Court said:
"Such a plan (i. e., giving the student a choice of a "single-sex" and co-educational institutions) exalts neither sex at the expense of the other, but to the contrary recognizes the equal rights of both sexes to the benefits of the best, most varied system of higher education that the State can supply." 317 S.W.2d p. 100.

16. Heaton v. Bristol, *supra*, 317 S.W.2d p. 99.

17. See Heaton v. Bristol, *supra*:
"Neither counsel for appellants nor appellees have pointed out any case wherein an appellate court of any jurisdiction has at any time held, or even intimated, that a state cannot, as a part of its over-all educational system, maintain one all-male or one all-female university as the Legislature has done in Texas for our higher educational system." 317 S.W.2d p. 98.

18. In the Attorney-General's opinion, attached to the stipulations of the parties, the admission of these male students violated the statute in question and "was *ultra vires*". This *ultra vires* act was, however, ratified under very special limitations by Act #371, Acts of the General Assembly of South Carolina (1969). The ratifying act, as construed by the Attorney-General, did not extend to permitting the admission normally of regular degree candidates and sought generally to preserve the status of Winthrop as a separate college for women.

State-supported institutions in this State whose admission policies are co-educational.

Let judgment be entered for the defendants.