Victoria Lamonte **ESLINGER**, for herself and for all other women similarly situated, Plaintiffs,

v.

Lovick Oliphant **THOMAS**, as Clerk of the Senate of South Carolina, Earle Elias Morris, Jr., as President ex-officio of the Senate of South Carolina, and as a representative of the Senators of South Carolina, and Edgar Allan Brown, as President Pro Tempore of the Senate of South Carolina, and as Senator of Barnwell County, South Carolina, and all other Senators of the State of South Carolina, jointly and severally, who are similarly situated, and their successors in each office, Defendants.

Civ. A. No. 71-153.

United States District Court, D. South Carolina, Columbia Division.

April 1, 1971.

**1330**

Laughlin McDonald, Columbia, S. C., Charles Morgan, Jr., and Norman Siegel, Atlanta, Ga., and Jean Hoefer Toal, of Belser, Belser & Baker, Columbia, S. C., for plaintiffs.

Daniel R. McLeod, Atty. Gen., Michael W. Tighe, Asst. Atty. Gen., Columbia, S. C., and E. N. Zeigler of Zeigler & Townsend, Florence, S. C., for defendants.

## ORDER

HEMPHILL, District Judge.

The plaintiff in this action seeks declaratory and injunctive relief against the defendants who are officers and members of the Senate of the State of South Carolina. The substance of the plaintiffs' complaint is that she was denied a position as page in the Senate of South Carolina solely because of her sex. She urges that the denial of employment as a page solely on the basis of sex is in violation of the equal protection clause of the Fourteenth Amendment. The matter came to be heard on the question of the plaintiffs' entitlement to the preliminary injunction and temporary restraining order sought by motion made at the time of the filing of the complaint. That is the sole issue before the court and the only issue which will be considered.

In considering a motion for preliminary injunction several factors are of primary importance. The party seeking such relief must show the court that it has a reasonable likelihood of prevailing on the merits of the suit. Upon such showing, there must be a weighing of the probability of success in the action with the damage that would result during the pendency of the action. The nature of the rights asserted and the public interest must also be considered. King v. Saddleback Junior College Dist., 425 F.2d 426 (9th Cir. 1970).

The defendants' answer sets forth three defenses, the substance of which is as follows. The first defense is that the state senator who recommended the plaintiff recommended others more highly and, therefore, that she was not denied employment because of her sex. The second defense is that the policy of hiring only males as Senate pages is reasonable and therefore not a violation of the rights of the plaintiff. The third defense is that the plaintiff has not petitioned the defendants for the relief she requests, which petition is provided for by the rules of that body, and that until such petition is made, judicial relief is unwarranted. At this point in the proceedings, the court is skeptical of the merit of the first and third defenses. While the court does not now attempt to make any final determination of their merit, it would appear that the recommendation was withdrawn or others more highly recommended, as a result of the Senate's policy, rather than for some reason unrelated to the plaintiff's sex. The fact that the Senate passed a resolution, referred to by defendants' counsel in argument, calling for a defense to the present action would indicate that the third defense was of little substance.

The court is of the opinion that consideration of the propriety of a grant of temporary relief requires that close attention be given the defendants' second defense. In that regard, the plaintiff argues strongly that the defendants must show a compelling interest to justify any practice of discrimination according to sex. It would not appear that defendants could show such compelling interest in this instance and, if that standard were proper, the plaintiff would be entitled to the temporary relief. See Henry v. Greenville Airport Commission, 284 F.2d 631 (4th Cir. 1960).

The court does not think that the Senate must demonstrate a high degree of necessity or a compelling interest as justification for its policy, assuming that the Senate's policy in employing pages does discriminate. The invocation of the doctrine of special or strict scrutiny in an area to which it has not heretofore been applied is not to be lightly undertaken by a court of this level. As understood by this court, there are two branches to the compelling interest doctrine. The first requires that classifications based upon suspect criteria be justified by a compelling interest. The second branch requires a compelling interest if the right affected by the classification is a "fundamental right". Though the argument of counsel places reliance upon both branches, reliance upon the second is misplaced. The rights which have been afforded the special protection in the cases which have applied the doctrine upon the second ground are the right to pro-create,[1] the right to vote,[2] and the right to travel from state to state.[3] The right to be Senate page is not such a "fundamental right." [4]

The plaintiff urges that, under the first branch of the doctrine, all classifications according to sex are suspect and should be justified only by a compelling interest. This branch of the doctrine originally dealt with classification according to race [5] but was perhaps made to apply to classification according to wealth.[6] One court has held that sex was such suspect basis for classification.[7] This court does not agree. There are very real differences between males and females. The fact that undeniable differences exist makes it natural and necessary that laws classify according to sex. The selective service law, the right of the married woman to dower, and the obligation of the parent to support the child are everyday examples of laws which discriminate according to sex. Thus, there is nothing sinister or suspect in the treating of the sexes differently. The grievance expressed by the plaintiff is with a particular situation in which she feels there is unreasonable discrimination against her sex. In this circumstance, however, the court's role will be limited to considering whether the classification is "arbitrary or wanting in any rational justification" as only such classification would offend the Equal Protection Clause.[8]

The Senate advances several reasons for its policy of not hiring females as pages. The reasons generally deal with

1. Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942).

2. Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965); Harper v. Virginia State Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966).

3. Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

4. The following language is found in Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600:
"But in moving from State to State or to the District of Columbia appellees were exercising a constitutional right, and any classification which serves to penalize the exercise of that right, unless shown to be necessary to promote a compelling governmental interest, is unconstitutional." (at 634, 89 S.Ct. at 1331).

However, expansion of the doctrine to the bounds indicated would not only allow the exception "to swallow the standard equal protection rule" (Id. at 661, 89 S.Ct. at 1345) but relegate due process to a role of insignificance except in considerations of procedure.

5. Korematsu v. United States, 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944).

6. Harper v. Virginia State Bd. of Elections, 383 U.S. 663, 668, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966). This court, however, would note that if wealth were indeed ruled a suspect classification, it is nevertheless the classification which necessarily constitutes the basis of not only laws regarding taxation but also of the major part of social legislation (i. e. welfare and social security).

7. United States ex rel. Robinson v. York, 281 F.Supp. 8 (D.Conn.1968).

8. Williams v. McNair, 316 F.Supp. 134 (D.S.C.1970).

the appearance of impropriety that may be given by a young woman's performance of some of a page's duties. The court does not know whether such reasons would meet even the traditional standard of reasonableness required by the Equal Protection clause. It was pointed out also that the pages have a personal relationship with and perform personal services for the members of the Senate and that this factor justifies the Senate's policy if the Senators deem the employment of female pages inappropriate. It may be that upon trial on the merits further justification can be advanced. The extent to which the customs and mores of our society can provide justification for a classification will also have to be considered.[9]

■ The case is one of first impression so far as this court can determine. If the plaintiff is to prevail, a difficult factual issue will have to be resolved in her favor. At this point the ultimate success of the plaintiff in this action is questionable. In considering the propriety of the temporary relief the court also notes that the plaintiff can achieve a large part of the experience she desires by observing the sessions of the Senate which are open to the public.

The remuneration earned by a page is a relatively small sum and the plaintiff does not urge her need of that sum for the continuation of her education.

On the other hand, an order directing the defendants to employ the plaintiff in the position she seeks would grant her the complete relief she seeks at this early stage. The order requested by the plaintiff only enjoining the defendants from discriminating according to sex would give her little immediate comfort as all of the positions have been filled and so such injunction would amount to no more than a premature reprimand of the defendants. The court would be reluctant to interfere with the internal operations of the South Carolina Senate as that body attempts to discharge its responsibilities to the people of this state. The United States Courts have responsibilities which may not be avoided in deference to the Legislature of a State. However, the court should not interfere hastily or without due consideration with a body of the stature of the Senate of the State of South Carolina.[10]

For the reasons above stated the motion of the plaintiff must be denied.

And it is so ordered.

---

9. See Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968). It would appear that as the mores of a society regarding the sexes may have as their basis real and continuing differences in the characteristics of the members of the classes, as opposed to customs regarding race perpetuated only by tradition or prejudice, the former may be entitled to some weight in determining the reasonableness of the Senate's practice.

10. The court does not imply that it relies upon any doctrine of abstention. Rather it is impressed with considerations analogous to those recognized in Kirstein v. Rector and Visitors of University of Virginia, 4 Cir., 309 F.2d 184, where the court quoted:
"It is not uncommon for courts, when declaring constitutional rights not pre-viously recognized and declared, to delay for a reasonable time, in consideration of practical problems incident to the implementation of those rights, the actual exercise of the newly declared right." White v. Crook, 251 F.Supp. 401, n. 16 (M.D.Ala.1966), citing Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), and Brown v. Board of Education of Topeka Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954). (at 188)
Where there has been no final determination of the previously undeclared right, the court should be even more cautious in requiring precipitous action which would result in inconvenience or embarrassment to the state.