Victoria Lamonte **ESLINGER**, for herself and for all other women similarly situated, Plaintiffs,

v.

**Lovick Oliphant THOMAS, as Clerk of the Senate of South Carolina, et al.,** Defendants.

Civ. A. No. 71–153.

United States District Court,
D. South Carolina.
Columbia Division.
March 28, 1972.

Laughlin McDonald, Columbia, S. C., Charles Morgan, Jr., and Norman Siegel, Atlanta, Ga., Jean Hoefer Toal, Columbia, S. C., for plaintiffs.

Dan McLeod, Atty. Gen. Hubard W. McDonald, Jr., Columbia, S. C., E. N. Zeigler, Florence, S. C., for defendants.

## ORDER

CHAPMAN, District Judge.

This matter was tried before the Court on January 17 and 18, 1972 without a jury. Following completion of the testimony the parties requested additional time to submit briefs and legal authorities. These have now been received and duly considered and the case is ripe for decision.

The plaintiff commenced this action on February 11, 1971, by service of a summons and complaint and a Motion for Preliminary Injunction. The complaint alleges that the plaintiff, a female law student at the University of South Carolina Law School and over the age of 21, has been denied employment as a Page in the Senate of South Carolina solely because of her sex, and that such denial of employment discriminates against her in violation of her right to equal protection of the laws under the Fourteenth Amendment of the United States Constitution.

Plaintiff also alleges that she is representative of a class composed of all female citizens of South Carolina and asks that this be declared a class action under Rule 23, Federal Rules of Civil Procedure, and that defendants be enjoined from discriminating against females in its employment practices.

Defendants in their answer contend, (a) that plaintiff's recommendation for appointment as a Page was withdrawn by Senator Walter J. Bristow, Jr., her sponsoring Senator, and that Senatorial endorsement or sponsorship is required for the appointment to the temporary job as Senate Page; (b) that the defendants believe that the Senate's refusal to employ females as Senate Pages is reasonable and necessary in order to prevent the appearance of impropriety because of the personal nature of some of the errands run and services performed by Pages for members of the Senate; and (c) that plaintiff has failed to exhaust her administrative remedies in not petitioning the Senate itself to employ her and overrule the actions of the Senate Clerk, defendant Thomas.

The plaintiff's motion for a preliminary injunction and Temporary Restraining Order was denied by Order of Honorable Robert W. Hemphill dated April 1, 1971, 324 F.Supp. 1329, and such Order was thereafter affirmed by the United States Court of Appeals for the Fourth Circuit, dated May 28, 1971. The Court of Appeals remanded the case for a decision on the merits.

Thereafter, all parties moved for summary judgment under Rule 56 and these motions were denied by this Court on November 16, 1971.

The original action did not seek monetary damages, but plaintiff amended her

complaint on February 25, 1971, claiming a loss of Forty and No/100 ($40.00) Dollars per week wages as a result of the defendants' discriminatory refusal to hire her as a Page.

Prior to this action the Senate of South Carolina hired only males as Senate Pages. These Pages were usually college students and a large number were law students from the University of South Carolina Law School. Pages performed various duties as assigned to them by members of the Senate, the Clerk of the Senate and other employees thereof. These duties were quite varied, but included running various errands, both personal and official, for members of the Senate, preparation and distribution of Acts, proofreading, indexing, bookkeeping, obtaining food, drink and refreshments for Senators, assisting with committee records, relaying messages to Senators, attending committee meetings, acting as assistants and helpers to Clerks of various committees and otherwise taking care of the needs of the Senators.

These Pages are considered temporary employees. They work only the months that the Senate is in session. The position was and still is one of political patronage, since a Page must be recommended by a member of the Senate before his application will be considered by the Clerk of the Senate. These positions are sought by and are quite attractive to college students because of the pay of approximately Forty and No/100 ($40.00) Dollars per week and the fact that the Pages are required to work only 28 hours per week, and these hours may be adjusted to suit the convenience and school schedule of the Page. Also, these positions are highly regarded by law students, since it provides an opportunity to watch the Governmental and lawmaking process, to meet Senators, state officials and other dignitaries, and also appeals to their natural interest in politics.

Although sponsorship by a Senator is a prerequisite to employment as a Page, the number of appointments a Senator may secure varies, depending upon the size of the Senator's county, his seniority and other considerations.

Prior to this action, the title "Page" was used to designate almost all of the temporary employees of the Senate. On June 2, 1971, the Senate of South Carolina adopted Resolution S.525 [1] by which

1. "A SENATE RESOLUTION RELATING TO CLASSIFICATION OF SOME PART-TIME EMPLOYEES AND CERTAIN RESPONSIBILITIES RELATING TO THEIR EMPLOYMENT.

Whereas, the Senate desires to create reasonable classification of some part-time employees heretofore generally known as pages; and

Whereas, applicants for these part-time positions must be sponsored by a Senator and the final selection of these applicants is a prerogative of the Senators, subject to such rules and regulations as the Clerk of the Senate shall prescribe; and

Whereas, it is the sense and judgment of the Senate that certain functions performed by pages in personal attendance upon the Senators and in the performance of personal errands for Senators while the Senate is in session are not suitable under existing circumstances for young ladies and may give rise to the appearance of impropriety; and

Whereas, recent renovations in the State House have provided additional office space for routine clerical and committee functions; and

Whereas, some routine clerical and committee duties may be appropriately performed by young ladies; and

Whereas, the Senate wishes to establish reasonable classifications and responsibilities for the filling of these positions according to the duties required, with reasonable restrictions.

Now, therefore,

Be it resolved by the Senate of State of South Carolina:

That the following classifications of some part-time employees are:

1. Senate pages, whose primary duties shall be assisting the regular high school pages (three) in performing the various errands and duties as requested by the Senators, President and clerks, shall be male students.

2. Clerical assistants, whose primary duties shall be posting of records or in-

it set forth classifications and duties of its part-time employees, formerly known as Pages.

Under this Resolution females may be employed as "clerical assistants" and as "committee attendants", but may not be employed as "Senate Pages, whose primary duty shall be assisting the regular high school pages (three) in performing, the various errands and duties requested by the Senators, President and Clerks. . ."

The record shows that following the adoption of S.525 female college students have been employed as "clerical assistants" and "committee attendants", but plaintiff has not applied for such employment. She insists that she has the right to be a "Senate Page" with its present duties and she asserts that under S.525 the Senate of South Carolina still discriminates unconstitutionally against her and other females in its employment practices of temporary employees.

The case raises two basic questions which are now before the Court: (1) Did the Senate of South Carolina unconstitutionally discriminate against the plaintiff in failing to employ her for the term beginning January 1971, when she was recommended by a Senator, made application for employment and appeared qualified in every way, except for her female gender? (2) Is Senate Resolution S.525 in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution in allowing only males to serve as "Senate Pages" and perform the duties of running personal errands for Senators?

After careful consideration of the law and the evidence the Court makes the following

FINDINGS OF FACTS

1. Plaintiff is a female citizen of South Carolina over the age of 21 and a student at the University of South Carolina Law School.

2. Defendant Lovick Oliphant Thomas is the Clerk of the Senate of South Carolina; defendant Earle Elias Morris, Jr. is the present Lieutenant Governor of South Carolina and is President Ex-Officio of the Senate of South Carolina and the defendant Edgar Allan Brown is the present Senator from Barnwell County and serves as President Pro Tempore of the Senate of South Carolina. Each defendant is sued as an official of the Senate and not as an individual.

3. That on or about the 18th day of November 1970, plaintiff was recommended for appointment as a Page for the 1971 session of the Senate of South Carolina by Senator Walter J. Bristow, Jr. of Richland County, and thereafter she went to the office of the defendant Thomas to make application for such employment. She was there advised by

dexing, bookkeeping, preparation and distribution of temporary acts and proofreading, may be female students.

3. Committee attendants, whose primary duties shall be answering telephones, assisting with committee records, relaying of messages to Senators attending committee meetings, and other duties assigned by the Chairman, may be female students.

Be it further resolved that no female student nominated by a Senator to one of these positions classified herein shall be appointed until the Senator files with the Chairman of the Rules Committee of the Senate a written statement, accompanying such appointment, from the parent or guardian of the female student concerned that such parent or guardian :

(1) Will be responsible for the safe transportation of the female student between the Senate and the female student's place of local abode, and return; and

(2) Will assume full responsibility for the safety, well-being and strict supervision of such female student while she is in her place of local abode.

The Rules Committee of the Senate shall hear and report to the Senate complaints concerning the refusal of appointment of Senate pages, committee attendants and clerical assistants by the Senators nominating them, and the failure of a Senator promptly to make complaint to the Rules Committee shall be deemed to be a withdrawal of the nomination giving rise to the complaint."

a secretary to the defendant Thomas that she could not be employed as a Page, because she was a female.

4. Approximately one week later, plaintiff talked with defendant Thomas about employment, and was advised by him that she would not be employed as a Page, because she was a female. Thomas suggested that she apply for a job as a tour guide in the State House.

5. After the plaintiff unsuccessfully appealed to the Lieutenant Governor and the Governor for South Carolina, Senator Walter J. Bristow, Jr. interceded on her behalf with the defendant Thomas, but was unsuccessful in getting Thomas to change the custom of the Senate to allow the employment of a female Page.

6. That under the custom and procedures of the Senate of South Carolina, a person must be recommended by a Senator for employment as a Page, but the final appointment is made by the Clerk of the Senate, defendant Thomas.

7. Thereafter Senator Bristow changed his recommendation for prospective Pages and removed the plaintiff from a preferred position on his list, but this action was taken only after Senator Bristow learned that defendant Thomas would not employ the plaintiff because of her sex and any continued effort by him to secure her appointment as a Page would be futile under the then existing custom of the Senate.

8. That plaintiff was denied employment as a temporary employee of the Senate of South Carolina at the beginning of the January 1971 session solely because of her sex.

9. That on June 2, 1971, the Senate of South Carolina adopted Resolution S. 525, which changed its employment practices to allow the employment of females in positions known as "clerical assistants" and as "committee attendants", with duties which comprised almost all of the duties formerly performed by Pages.

10. After adoption of S.525 a number of females applied to defendant Thomas for employment and were employed as "clerical assistants" and "committee attendants". That these young ladies have never been called "clerical assistants" and "committee attendants" but have always been referred to as "Pages" by Senators, employees and personnel in and around the State House. That the only difference in the duties of the female employees is that they are prevented by S.525 from running personal errands for members of the Senate.

11. The record is clear that females employed since June 2, 1971, have had an equal opportunity to watch the Governmental process, attend meetings of committees, meet Senators, dignitaries and other public officials, observe debate, run official errands to the offices of the Attorney General, the Governor, the Tax Commission and other state offices, and have received pay equal to the pay received by male temporary employees.

12. The female employees are prevented by S.525 from running personal errands or attending to the purely personal needs of the Senators. These personal services include making trips to Senators' hotel and motel rooms, checking Senators out of such rooms at the end of the day or week, cashing personal checks for Senators at local banks, running errands to personal automobiles, on occasion driving such personal automobiles, and obtaining food and refreshments for the Senators.

13. These personal errands for the Senators comprise a minute part of the time and duties of a Senate Page. Present and former Pages testified they had worked for years without ever being asked or required to run a personal errand or perform such a personal service. These personal errands are of no value to the education and experience of the Page or other person running them, and if anything, represent a burden and not a benefit of employment.

14. That females employed by the Senate since S.525 are treated equally with males in pay, in title (since all are called Pages), in opportunity to learn, and in every other way, except for the running of purely personal errands for Senators.

15. That plaintiff did not apply for employment in June 1971 after passage of S.525, and did not apply for employment at the extra session of the Senate in September 1971 or for the regular session which began in January 1972.

16. That other females applied for employment after S.525 and a number have been employed and are now being called "Pages". Senator Bristow, plaintiff's sponsor for the 1971 session, recommended and secured the appointment of two young ladies for the 1972 term of the Senate.

17. The plaintiff testified that she did not believe she would have been employed, even if she had made application after the passage of S.525, but the Court finds no justification for her conclusion and finds as a fact that she would have been employed if she had applied and been recommended by Senator Bristow.

18. That as a result of the defendant's discriminatory employment practices prior to the adoption of S.525 on June 2, 1971, plaintiff was unconstitutionally denied employment for which she was qualified and recommended.

19. That the employment practices of the Senate of South Carolina as to its permanent employees have not been and are not now discriminatory as to sex, and its employment practices as to temporary employees, which previously discriminated against females, are no longer discriminatory in view of the passage and implementation of Senate Resolution S.525.

## CONCLUSIONS OF LAW

1. This action is brought under the "Due Process" clause of the Fourteenth Amendment of the Constitution of the United States [2] and Title 42, Section 1983 [3] and Section 1988 [4] of the United States Code.

2. The Court has jurisdiction of the plaintiff and the defendant Lovick Oliphant Thomas pursuant to Title 28, U.S.C. Section 1343(3) and (4) [5], and under Title 28, U.S.C. Section 2201. [6]

2. Fourteenth Amendment, Section 1. ". . . nor shall any State deprive any person of life, liberty, or property, without due process of law; . . ."

3. Title 42, Section 1983. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

4. Title 42, Section 1988. "The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this chapter and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty."

5. Title 28 U.S.C., Section 1343. "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;
(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."

6. Title 28, Section 2201. "In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such

3. The defendants Earle Elias Morris, Jr., as President Ex-Officio of the Senate of South Carolina and the defendant Edgar Allan Brown, as President Pro Tempore of the Senate of South Carolina and as Senator from Barnwell County and all other Senators of the State of South Carolina, jointly and severally, are immune from this type of suit under Article 1, Section 6 of the Constitution of the United States.[7] Although this immunity was not raised by the defendants Morris and Brown in the pleadings, it was presented in said defendants' final memorandum of law and must be considered by the Court. This immunity has been extended to State Senators and representatives under Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). Although Lieutenant Governor Morris and Senator Brown and all other Senators are immune from this type of suit, the defendant Lovick Thomas, as an employee of the Senate is not immune. See Dombrowski v. Eastland, 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967); Kilbourn v. Thompson, 103 U.S. 168, 26 L.Ed. 377 (1881) and Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969).

4. That the Senate of South Carolina had no written regulation or rule against the employment of females as temporary employees, but by custom and usage, females were deprived of the right to be so employed prior to the adoption of Senate Resolution S.525.

5. That this suit is not the type of action against a state which is prohibited by the Eleventh Amendment of the United States Constitution.[8] Although the Eleventh Amendment has been construed as barring suits against the state without its consent even where the suit is brought by a citizen of that state,[9] since Ex Parte Young, 209 U.S. 123, 159–160, 28 S.Ct. 441, 52 L.Ed. 714 (1908), suits against states have been allowed where Constitutional violations are involved. For the purposes of the Eleventh Amendment such state action is considered to be the individual act of a particular state official or employee, when it is found to be unconstitutional, but for the purposes of the Fourteenth Amendment it is considered state action. Most of the landmark cases in the field of school desegregation are actually suits against the state, but are considered suits against the individual officials. See School Board of City of Charlottesville, Va. v. Allen, 240 F.2d 59 (4th Cir. 1956), Griffin v. County School Board of Prince Edward County, 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964), Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) and Atkins v. City of Charlotte, 296 F.Supp. 1068 (W.D.N.C.1969). In all of these cases the Eleventh Amendment was unsuccessfully used as a defense.

The Equal Protection Clause of the Fourteenth Amendment was passed originally to secure the rights of new Negro citizens, but it is obviously applicable to all citizens. Fay v. New York, 332 U.S. 261, 67 S.Ct. 1613, 91 L.Ed. 2043 (1947). Even though Negroes may have been the original beneficiary of this Amendment, the Supreme

---

declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

7. Article 1, Section 6. "The Senators and Representatives . . .; and for any Speech or Debate in either House, they shall not be questioned in any other Place."

8. Eleventh Amendment. "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

9. Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

Court in Harper v. Virginia State Board of Elections, 383 U.S. 663, 669, 86 S.Ct. 1079, 1083, 16 L.Ed.2d 169 (1966) stated:

". . . The Equal Protection Clause is not shackled to the political theory of a particular era. In determining what lines are unconstitutionally discriminatory, we have never been confined to historic notions of equality, any more than we have restricted due process to a fixed catalogue of what was at a given time deemed to be the limits of fundamental rights."

6. To date there have been only a few reported cases involving women's rights under the Equal Protection Clause and decisions directly on point are impossible to find, but this does not justify deprivation of their Constitutional rights. In Kirstein v. Rector and Visitors of University of Virginia, 309 F.Supp. 184 (D.C.1970) (Three Judge Court), it was stated:

"The plain effect of the Equal Protection Clause of the Fourteenth Amendment is 'to prohibit prejudicial disparities before the law. This means prejudicial disparities for all citizens —including women.' White v. Crook, 251 F.Supp. 401, 408 (M.D.Ala.1966) (holding that women may not be denied the right to jury service). Abbott v. Mines, 411 F.2d 353 (6th Cir. 1969) (women's right to jury service); United States ex rel. Robinson v. York, 281 F.Supp. 8 (D.Conn.1968) (women's right to sentencing on equal basis with men). We hold, and this is all we hold, that on the facts of this case these particular plaintiffs have been, until the entry of the order of the district judge, denied their constitutional right to an education equal with that offered men at Charlottesville and that such discrimination on the basis of sex violates the Equal Protection Clause of the Fourteenth Amendment."

This was an action to compel the admission of women to the College of Arts and Sciences of the University of Virginia at Charlottesville.

7. The defendants have shown no justifiable reason for refusing to hire females as temporary employees, prior to the adoption of S.525 on June 2, 1971, and the Court finds that such custom and usage of the South Carolina Senate denied the plaintiff her Constitutional right to seek employment and be employed, if found otherwise qualified.

8. The Court finds that the Constitutional rights of female citizens are not unduly restricted or violated by the present provisions of S.525. The plaintiff has not shown that the prohibition against females running personal errands for members of the Senate is arbitrary or wanting in rational justification. In Williams v. McNair, 316 F. Supp. 134 (D.C.S.C.) aff'd. 401 U.S. 951, 91 S.Ct. 976, 28 L.Ed.2d 235, Judge Russell stated:

"The Equal Protection Clause of the Fourteenth Amendment does not require 'identity of treatment' for all citizens, or preclude a state, by legislation, from making classifications and creating differences in the rights of different groups. (citations omitted). It is only when the discriminatory treatment and varying standards, as created by the legislative or administrative classification are arbitrary or wanting in any rational justification that they offend the Equal Protection Clause. (citation omitted). Specifically, a legislative classification based on sex, has often been held to be constitutionally permissible." (numerous citations omitted showing judicial approval of various laws and regulations treating male and female differently.)

The Senate of South Carolina could have accomplished the same purpose as S.525 by simply passing a Senate Rule that no member of the Senate should ask a female temporary employee to run a personal errand, and such a rule

should be free from judicial interference.

9. It is obvious from the record that the defendant Thomas acted in good faith and in keeping with the policies of his employers (members of the South Carolina Senate) in refusing to appoint the plaintiff to a position of temporary employment. All of his duties and powers are dictated by the Senate, and even his power to appoint temporary employees can be exercised only when persons are recommended by a Senator. He should not be required to speculate that a court will declare long standing customs and usages of the Senate to be unconstitutional.

10. The defendant Thomas was sued in his official capacity as Clerk of the Senate, and not in his capacity as an individual.

In *Kirstein* supra, in deciding that damages should not be found against the Board of Visitors at the University of Virginia the Court stated:

"The defense of official immunity should be 'applied sparingly in suits brought under § 1983.' (citation omitted). Nevertheless, it should be available to public officials who act in unquestioned good faith and in perfect accord with long standing legal principle only to find their discretionary conduct declared illegitimate under a later constitutional interpretation. In an analysis of the immunity doctrine, Judge Learned Hand stated that its purpose is to encourage conscientious public officials by not 'exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors'. (citation omitted).

"In balancing the immunity doctrine against the purpose of Section 1983, we think that no violence to the latter will be done by the application of the former here. Indeed, to hold public officials liable for acts that become unconstitutional *ex post facto* would tend to reduce popular respect for federally guaranteed rights rather than

increase it. The admissions policy formulated by the University Board of Visitors and acquiesced in by the other defendants was in contravention of no clear constitutional principle when adopted. We hold that plaintiffs are not entitled to damages under Section 1983."

Under all of the circumstances in this case the defendant Thomas was acting in good faith and therefore will not be held responsible in damages for his actions which are now recognized as being unconstitutional.

11. The Senate of South Carolina by passing Resolution S.525 has ended the unconstitutional hiring practices that previously existed in denying females the opportunity to be employed as temporary employees during the legislative term. The provision of S.525 preventing female employees from running personal errands for members of the Senate has a rational basis and is not unreasonable, arbitrary or unduly restrictive, and is not unconstitutional. The primary relief sought by this suit has been accomplished by action of the Senate of South Carolina and the Court finds no justification or need for an injunction or restraining order. In *Kirstein*, supra, the Court found that an admissions policy, adopted after the suit was commenced, to allow the admission of females to the University of Virginia, met the Constitutional requirements of equal protection, and denied an injunction and also the claim for monetary damages, finally dismissing the case since the question was moot.

The claim for monetary damages as to the defendants Morris and Brown is barred under Article I, Section 6 of the United States Constitution and the Court has found no right to monetary damages against the defendant Thomas because he was acting in good faith.

12. In presenting this Constitutional question the plaintiff has urged this Court to apply the rigid standard of "compelling state objective" rather than "rational basis" to the restrictions contained in S.525. State actions, which in-

volve racial discrimination and which restrict Constitutional rights and voting rights, have been subjected to this close scrutiny.

The Equal Protection Clause must be viewed in the light of the historical fact that the central purpose of the Fourteenth Amendment was to eliminate racial discrimination emanating from official sources within a state. See McLaughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964), which outlines the following:

"This strong policy renders racial classifications 'constitutionally suspect,' Bolling v. Sharpe, 347 U.S. 497, 499, [74 S.Ct. 693, 694, 98 L.Ed. 884] (1954); and subject to the 'most rigid scrutiny,' Korematsu v. United States, 323 U.S. 214, 216, [65 S.Ct. 193, 194, 89 L.Ed. 194] (1944); and 'in most circumstances irrelevant' to any constitutionally acceptable legislative purpose, [Kiyashi] Hirabayashi v. United States, 320 U.S. 81, 100, [65 S.Ct. 1375, 1385, 87 L.Ed. 1774] (1943). Thus it is that racial classifications have been held invalid in a variety of contexts. See, e. g., [Tan-

cil v. Woolls]. Virginia Board of Elections v. Hamm, 379 U.S. 19, [85 S.Ct. 157, 13 L.Ed.2d 91] (1964) (designation of race in voting and property records); Anderson v. Martin, 375 U.S. 399, [84 S.Ct. 454, 11 L.Ed.2d 430] (1964) (designation of race on nomination papers and ballots); Watson v. City of Memphis, 373 U.S. 526, [83 S.Ct. 1314, 10 L.Ed.2d 529] (1963) (segregation in public parks and playgrounds); Brown v. Board of Education, 349 U.S. 294, [75 S.Ct. 753, 99 L.Ed. 1083] (1954) (segregation in public schools)."

■ Other classifications and restrictions which serve to penalize or restrict the exercise of a constitutionally protected right are also scrutinized closely and must be shown to promote a "compelling governmental interest" in order to withstand attack under the Fourteenth Amendment.[10]

■ The provisions of S.525, to which the plaintiff raises her constitutional objection, do not fall within any of the above categories. Discrimination by sex is not patently unlawful or unconstitutional.[11] There is a real physical

10. See Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1968) (one year residency requirements for welfare recipients); Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942) (sterilization of habitual criminals); Bates v. Little Rock, 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960) (disclosure of lists of members of organizations); Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) (disqualification for unemployment compensation because of refusal to accept Saturday employment because of religious beliefs); Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969) (property tax payer limitation on right to vote); Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968) (election law which favors the established parties over the American Independent Party); Harper v. Virginia Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966) (poll tax unconstitutional).

11. West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937) (Statute providing minimum wage

for women but not men); Radice v. New York, 264 U.S. 292, 44 S.Ct. 325, 68 L.Ed. 690 (1924) (special statute limiting hours of night work of women in cities with a particular population); Goesaert v. Cleary, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163 (1948) (proscribing use of women as licensed bartenders); Hoyt v. Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961) (jury duty voluntary for women but compulsory for men); Miskunas v. Union Carbide Corporation (7th Cir. 1968) 399 F.2d 847, cert. denied 393 U.S. 1066, 89 S.Ct. 718, 21 L.Ed.2d 709(c), denial to wife, but not to husband, of right to recover for loss of consortium); Gruenwald v. Gardner (2nd Cir. 1968) 390 F.2d 591, cert. denied 393 U.S. 982, 89 S.Ct. 456, 21 L.Ed.2d 445 (women given more favorable treatment than men in Social Security benefits); U. S. v. St. Clair (D.C.N.Y.1968) 291 F.Supp. 122 (men subject, women not, under Selective Service Act); Clarke v. Redeker (D.C.Iowa 1966) 259 F.Supp. 117 (fixing wife's residence by husband's but not the reverse); Heaton v. Bristol (Tex.Civ. App.1958) 317 S.W.2d 86, cert. denied

difference between male and female. The law allows them to be treated differently when the classification or standard is not arbitrary and wanting in rational justification.

This Court does not believe that forbidding females, temporarily employed by the South Carolina Senate, from running personal errands for its members is arbitrary and that a rational justification has been shown therefor. The burden is not upon the defendants under the facts in this case to show a "compelling state objective".

It is, therefore, ordered that this action be and the same is hereby dismissed.

Robert F. O'Connell, Dike, Bronstein, Roberts & Cushman, Boston, Mass., for plaintiffs.

Gerald Altman, Morse, Altman & Oates, Boston, Mass., for defendant.

359 U.S. 230, 79 S.Ct. 802, 3 L.Ed.2d 765 and Allred v. Heaton (Tex.Civ.App. 1960), 336 S.W.2d 251, cert. denied 364

U.S. 517, 81 S.Ct. 293, 5 L.Ed.2d 265 (both involving denial of right of women to attend all-male state-supported college).